## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SONY ELECTRONICS, INC., et al.,

*Plaintiffs*,

v.

SOUNDVIEW TECHNOLOGIES, INC.,

*Defendant*.

Lead Docket No.:
3:00 CV00754 (JBA)
USDC/New Haven

Member Case Nos.:
3:00 CV 768 (JBA)
3:00 CV 981 (JBA)

ALL CASES

## REPLY OF NON-SOUNDVIEW
## PARTIES TO OPPOSITION TO THEIR
## MOTION FOR ATTORNEYS' FEES

January 26, 2005

Of Counsel:

Richard L. DeLucia
Richard S. Gresalfi
Elizabeth Gardner
KENYON & KENYON
One Broadway
New York, NY
Tel: 212-425-7200
Fax: 212-425-5288

Vincent J. Belusko
Robert S. McArthur
MORRISON & FOESTER LLP
555 W. Fifth Street
Los Angeles, CA 90013
Tel: 213-892-5200
Fax: 213-892-5454

Larry S. Nixon
Jeffry H. Nelson
Robert Adams
NIXON & VANDERHYE P.C.
1100 N. Glebe Road
Arlington, VA 22201
Tel: 703-816-4000
Fax: 703-816-4100

Peter J. Kadzik
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street NW
Washington, DC 20037-1526
Tel: 202-785-9700
Fax: 202-887-0689

William M. Bloss
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 Fairfield Avenue
Bridgeport, Connecticut 06604
Tel: 203-336-4421
Fax: 203-368-3244

Jacqueline D. Bucar (CT01187)
TYLER, COOPER & ALCORN
205 Church Street
New Haven, CT 06509
Tel: 203-784-8200
Fax: 203-789-2133

Brian E. Moran
ROBINSON & COLE LLP
Financial Centre
695 East Main Street
Stamford, CT 06904-2305
Tel: 203-462-7500
Fax:  203-462-7599

Attorneys for Plaintiff/Counterclaim
Defendants Sony Electronics Inc. and Sony
Corporation of America on behalf of all of
the Non-Soundview Parties.

## I.    INTRODUCTION

This Court is well-positioned to determine the key issue relating to this motion, *i.e.*, whether Soundview could possibly have had a good faith belief in its asserted claim construction in which the recitation of *separate* rating signal lines can cover *shared* lines—a claim construction that Soundview knew was required to support a finding of infringement.  This Court analyzed the claim language and specification in great detail in deciding the summary judgment motion.  It concluded not merely that Soundview's proposed construction was wrong, but that it had no support *at all* in either the claim language or the specification.  The Court's opinion laid bare the utter lack of merit of Soundview's asserted construction, and it demonstrates that Soundview could not possibly have had a *good faith* belief in its assertion of infringement.

Soundview's opposition fails to address this crucial issue.  Rather, Soundview tries to establish that its actions were reasonable by resorting to strained re-characterizations of the litigation history, re-argument of long-rejected theories and after-the-fact rationalizations of untenable claim construction positions taken before and after the suit was filed.  "Separate" is not "shared," and Soundview has provided no explanation showing that it ever had a good faith basis for asserting otherwise.

None of the "explanations" Soundview posits in its opposition have any merit and are merely designed to obscure the key inquiry.  For example, Soundview tries to establish its good faith belief in its infringement allegations by virtue of the fact that other manufacturers took licenses.  This is simply not credible or relevant.  The licenses and the actions of other parties bear no relation to whether Soundview's claim construction and

1

infringement allegations had any substantive merit as to the Non-Soundview Parties. These licenses merely reflect their companies' unwillingness to engage in protracted litigation.  These licenses do not legitimize Soundview's actions.  Rather, they show the ill-gotten gains that Soundview reaped by unabashedly asserting a meritless claim construction, counting on the litigation-averse nature of its targets.[1]

  Nor does Soundview's reliance on the vagaries of claim interpretation in patent cases support its position here.  In essence, Soundview argues that because the claim construction process is sometimes unpredictable, *any* asserted claim interpretation must necessarily be reasonable.  Under this approach, no case would ever be deemed exceptional and speculators such as Soundview would be free to assert outrageous constructions and infringement allegations without accountability.  The unpredictability of the claim interpretation process in general cannot make Soundview's actions reasonable or in good faith.  In this case, where the issues have been addressed on their merits, and

---

[1]  Soundview repeatedly asserts that its license somehow demonstrates its good faith and a belief by the settling parties that they infringed.  To support its argument, Soundview relies upon four irrelevant or inadmissible documents.  First, it cites to a trade association patent search which merely indicates that some patents "are more easily infringed."  (*See* Opp. at 17, Exh. D at E0722).  However, the search does not state that any company has infringed any patent, let alone the Elam patent.  Consequently, the cited document has no relevance.  Second, Soundview quotes from a document that lacks any foundation as to its source, origin or author.  (*See* Opp. at 17, Exh. C).  Not even Soundview claims that it can provide any information as to its origin.  Thus, the document is inadmissible.  Third, Soundview cites to a Hitachi document that purportedly says that the EIA standard infringes the Elam Patent.  (*See* Opp. at 17, Exh. A).  There is no evidence that this document was written by a person skilled in patent law or having sufficient technical insight to make a determination as to whether or not the industry standard infringes.  As a result, this statement is immaterial and/or violates Fed.R.Evid., Rule 403 (undue prejudice or confusion).  Fourth, Soundview relies upon a statement allegedly made by four companies to the FCC that the lack of a Soundview license "may cause" a problem.  (*See* Opp. at 18, Exh. N).  This equivocal comment is certainly not an admission of infringement as argued by Soundview.

Soundview's assertions have been completely rejected, unpredictability of the patent litigation process is irrelevant.

Soundview never had a good faith belief in its position at any time because its shifting claim construction positions never bore any relation to the patent.[2]  Initially, Soundview's pre-suit allegations that the television standard itself infringed the claims of the patent was preposterous in light of the structural nature of the claims.  Moreover, both a named inventor and a principal in Soundview recognized pre-suit that the claims requiring separate rating signal lines did not read on microprocessor-controlled blocking systems.  Moreover, Soundview never once advanced a separate credible argument for infringement under the Doctrine of Equivalents during the course of this action.

Soundview knew or should have known that its actions were never reasonable; but it proceeded anyway in hopes of extracting more ill-gotten licensing revenue.  This Court recognized that Soundview's position was "flawed," and no concocted explanations or revisionist story-telling can alter the fact that Soundview should never have brought this lawsuit.  (D.I. 328 at 22 [Ruling on Motion for Summary Judgment of Non-

---

[2]  Soundview cannot rely on the Air Force attorney who advised Mr. Elam that the Doctrine of Equivalents should be considered when there is no literal infringement.  (Opp. at 21-22, [Exh. R at 407]).  The Air Force attorney apparently did not review any accused television or provide an opinion of how there could be infringement under the doctrine of equivalents in this case.  If anything, it indicates a clear understanding that the language of the asserted claims could not literally cover the microprocessor-based implementations used by the Non-Soundview Parties.  Similarly, the EIA television standard does not support Soundview infringement claim, regardless of what Mr. Schmidt believed about that standard.  (Opp. at 22-25).  The standard does not require or suggest use of separate rating signal lines.  (*See* Memo in Support at 10).  Soundview references to Mr. Schmitt's testimony regarding an "auxiliary circuit" and "decoder" (Opp. at 22-25) do not address how Mr. Schmitt could have reasonably believed that the standard required the use of separate rating signal lines.

Infringement]). Soundview's wasteful and expensive conduct must have consequences, and it is only fair that it should be compelled to reimburse the Non-Soundview Parties' expenses relating to their defense against Soundview's spurious charges.

## II.    SOUNDVIEW NEVER HAD A GOOD FAITH BELIEF THAT ITS CLAIM CONSTRUCTION POSITIONS WERE REASONABLE

Soundview asserts in its opposition that the non-infringement judgment does not make this an exceptional case. (*See* Soundview's Opposition to Attorney Fee Motion (Opp.) at 13.) The non-infringement finding and its *per curiam* affirmance by the Federal Circuit are the logical outcomes of the subjectively and objectively unreasonable claim constructions advanced by Soundview at various stages of this litigation. Forcing the Non-Soundview Parties to defend against baseless infringement allegations based upon such unreasonable claim constructions makes this case exceptional.

None of Soundview's many changing claim construction positions was reasonable when asserted, and the after-the-fact rationalizations now raised in its opposition do not legitimize its actions. Soundview tries to justify the "reasonableness" of its shifting claim constructions by asserting that they were based on dictionary definitions. (*See* Opp. at 13-17.) Soundview abstractly cites two dictionary definitions which supposedly support its "separate rating signal lines" claim construction, even going so far as to contort the definitions of line (singular) with conductors (plural) in an attempt to fit its infringement theory. In doing so, Soundview once again ignores the explicit claim language requirement that the plural rating line**s** be "separate."

Soundview's invocation of dictionary definitions does not legitimize the claim construction assertions made here.[3]   It did not matter what definition of "line" that Soundview chose to use – the claim required that the rating line for each rating must be "separate."  With respect to the meaning of "separate," whatever meaning employed must relate to *structure,* something Soundview has consistently ignored.  It is Soundview's continued efforts to eliminate the "separate" limitation by arguing that it refers to signal patterns rather than structure that is the most baseless and blatant example of the unreasonableness of their infringement claim.  This court brushed aside this argument -- it is so utterly devoid of any merit that Soundview could not possibly have had a good faith belief that it was correct.  (D.I. 482 at 22).

Both the claim language and the specification instruct that rating signal lines  of the claimed structure must be *separate.*  This Court found that there was no support in the patent for Soundview's assertion that separate rating signal line can be interpreted as a pattern on a set of conductors.  (D.I. 482 at 22); *see also Sony Elecs. v. Soundview Tech. Inc.*, 225 F. Supp 2d 164, 175 (D. Conn. 2002).  Soundview vainly tries to connect its misguided claim construction to the specification of the patent (*see* Opp. at 16), but tellingly omits any discussion of Figure 2A which explicitly shows a structure in which

---

[3] Soundview did not cite these particular dictionary definitions during the claim construction hearing before the Special Master or during summary judgment disposition before this Court.  Soundview first raised these definitions on appeal.  (*See* Soundview Appeal Brief at 25.)  Soundview cannot now abstractly point to some dictionary definition couched as a traditional canon of claim interpretation to save its claim constructions or save itself from an exceptional case determination.  This after-the-fact resort to dictionary definitions cannot supply the requisite good faith required at the time of the filing of the lawsuit or retroactively inject reasonableness into Soundview's actions during the litigation before this Court.

there is a one-to-one correspondence between an audio or video rating and a rating signal line. "When the meaning of a term as used in a patent is clear, that is the meaning that must be applied in the construction of the claim and in the infringement analysis." *Voice Techs. Grp. v. VMC Sys., Inc.*, 164 F.3d 605, 613-14 (Fed. Cir. 1999). The meaning of "separate rating signal lines" was clear from the patent, yet, from the beginning, Soundview unreasonably ignored this clear meaning. Neither the patent specification nor after-the-fact dictionary definitions make Soundview's claim construction positions reasonable.

Contrary to Soundview, the patent examiner did not determine that the claimed "separate rating signal lines" covered shared bus lines of a microprocessor. (*See* Opp. at 18-30). The examiner considered patentability, but did not consider infringement. (*See* Opp., Exh. O). In rejecting the Elam patent claims for obviousness, the examiner did not equate "separate rating signal lines" to shared lines of the bus of a microprocessor. (*See* Opp., Exh. O at A00427).

Soundview also tries to explain away the multiple inconsistent claim constructions it proffered throughout the course of the litigation as attempts to adopt the construction of the Special Master and to narrow issues. (*See* Opp. at 30-31.) This argument is ridiculous. If it had adopted the Special Master's construction of separate rating signal line, Soundview should have voluntarily dismissed the lawsuit because the Non-Soundview Parties' microprocessor-based blocking system could not possibly have met this limitation (as this Court ruled in finding no infringement). The Special Master recommended that the Court adopt a definition that there is a separate rating signal line for each character

6

representing program content.  (*See* D.I. 284 [Report] at 45.)  In contrast, Soundview tried to avoid summary judgment by asserting its summarily discredited pattern theory  (*See* D.I. 338 [Soundview Opposition to Summary Judgment] at 19.)  While the Special Master specifically found that the rating lines must be separate, Soundview disregarded his finding and opposed summary judgment with its own fanciful argument that completely ignores the fact that the claims define structural lines and not fleeting signals.  By opposing summary judgment, Soundview did not narrow issues; it multiplied them.

Soundview's changing claim constructions were never reasonable.  Soundview knew this before it filed suit.  It knew this before the Special Master.  It knew this before this Court on summary judgment. It knew this before the Federal Circuit on appeal. Soundview had multiple opportunities to withdraw its frivolous claims but continued to press baseless positions time and time again, each time forcing the Non-Soundview Parties to expend money and resources to point out the unreasonableness of Soundview's positions.

### III.    THE ATTORNEYS' FEES MOTION IS TIMELY

Soundview argues that the Non-Soundview parties' motion for attorneys' fees was untimely because it was not filed within 30 days after "the appellate mandate returned to this Court." (Opp. at 7). Soundview asserts that the attorneys' fees motion should have been filed by October 7, 2004. (Opp. Br. at 7).  Soundview, however, ignores the language of this Court's Order of Stay Pending Appeal (D.I. 452) and the Court's October 5, 2004 Notice to Counsel (D.I. 466) requesting a Rule 26(f) case management plan.   The language of the Stay does not state that the stay expired with the appellate mandate.

Instead, the notice requested the parties to propose a plan for further proceedings, including claims for attorneys' fees.

The time deadline for filing a motion for attorneys' fees is set forth in Federal Rule of Civil Procedure 54(d)(2)(D), which expressly provides that "[u]nless otherwise provided by statute or order of the Court, the motion [for attorneys fees] must be filed no later than 14 days after entry of judgment." Soundview concedes that the 14 day deadline is subject to extension if either a local rule has been enacted (Opp. 7) or an order changes the deadline prior to the expiration of the deadline. (*See* Opp. 6, recognizing this Court extended the deadline by its September 25, 2003 Order of Stay Pending Appeal*). See also, Trancredit v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 226-27 (2d Cir. 2004)(recognizing that both the local rules and an order of the district court may extend the deadline in Rule 54).

By its Order of Stay Pending Appeal (D.I. 452), this Court expressly stated that "the remaining claims in this case shall be stayed pending appeal" and that this stay shall apply to "all pending claims and motions, the filing of any bill of costs, and the filing of any request for further relief."[4]  The Order does <u>not</u> state when the stay is to be lifted. Soundview reads this Order of Stay as meaning that the deadline for filing a motion for attorneys' fees starts to run when the appellate mandate is returned to this Court.  The Stay Order broadly "freezes" any action in the case concerning the remaining claims, attorneys

---

[4]    There is a pending claim for Soundview's inequitable conduct in procuring the patent. Consideration of an inequitable conduct issue must be given when making a ruling with respect to a motion for attorneys fees. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,* 182 F.3d 1356, 1359-60 (Fed. Cir. 1999); *see also*  D.I. 482 [Opposition to Motion to Dismiss (January 12, 2005)]).

fees requests and other relief.  In short and as understood by the non-Soundview parties, the intent of this Order of Stay was that this Court would set a further schedule of deadlines after it had considered the decision by the Federal Circuit.

The Notice to Counsel (D.I. 466) of October 5, 2004, ordered the parties to file a Rule 26(f) Report so that deadlines could be set for, *inter alia*, motions for attorneys fees and a 1-2 day trial on inequitable conduct.  This Notice clearly extended any possible deadline for filing a motion for attorneys fees because it contemplated the entry of an Order that would set the appropriate deadlines.  This intent is further evidenced by the briefing schedule set forth in the Scheduling Order dated November 10, 2004 (D.I. 470). The scheduling order was issued in response to the Rule 26(f) reports submitted by the parties.  This Order extended the deadline for the non-Soundview parties to file their motions for attorneys fees (excluding the inequitable conduct basis for attorneys fees) until December 8, 2004.

The Order of Stay did not evidence any intent to restart any time deadlines with respect to the filing of a motion for attorneys' fees.  Rather, it demonstrated a clear intent to stay any such deadline until the Court issued a scheduling order setting forth new briefing deadlines.  In any event, the Notice to Counsel (D.I. 466) was dated prior to the expiration of the date alleged by Soundview for when the motion was due.  Even assuming *arguendo* that Soundview is correct that Local Rule 11 set a deadline of October 7, 2004, the Notice to Counsel was entered prior to the expiration of that deadline.  Accordingly, in conformance with Rule 54, this Court entered an Order that extended the deadline for the

non-Soundview parties to file their motion for attorneys fees prior to the expiration of the

alleged deadline of October 7, 2004.

### IV.    THE ACTIONS OF THE NON-SOUNDVIEW PARTIES DO NOT PRECLUDE AN AWARD OF ATTORNEYS FEES

Soundview argues that it won some motions in this case.[5]  It then extrapolates that,

as a result of these "victories", the non-Soundview parties must be denied all attorneys

fees.  This argument is without logic or merit.  At best, these limited Soundview

"victories" may merely serve (at this Court's discretion) as a basis to lessen the amount of

the attorneys fees award to some degree.  Further, the fact that Soundview prevailed on an

early Rule 12 motion to dismiss as to the antitrust claims but then subsequently lost (after

the expenditure of large amounts of money on discovery by the non-Soundview parties)

should not decrease the amount of the attorneys fees award, because the issue was

ultimately won by the non-Soundview parties after Soundview was unable to provide any

factual or legal support for its antitrust arguments.

### V.    THE NON-SOUNDVIEW PARTIES NEED NOT EXACTLY DOCUMENT THEIR FEES AT THIS TIME

The motion for attorney fees requests leave to allow the Non-Soundview parties to

submit their proofs of actual attorney fees at a later date.  Soundview ignores this request

---

[5]  This point is subject to serious dispute when the decisions cited by Soundview are examined.  For example, the non-Soundview parties do not agree that the Special Master ruled in Soundview's favor "for 6 of the 7 major interpretational issues."  Moreover, such issues are irrelevant to the determination of whether Soundview could possibly have ever had a good faith belief that the accused televisions had separate rating signal lines.  Similarly, Soundview's alleged "victory" with respect to "documentation showing evidence of conspiracy" failed to provide any evidence that supported Soundview's antitrust claim.

for leave in arguing that the motion should fail because it does not set forth the exact amount of attorney fees. The Non-Soundview Parties will submit the proofs of attorney fees after resolution of this initial motion.

Rule 54(d)(2)(B) merely provides that "a fair estimate" of the legal fees must be disclosed and it contemplates the later submission of the attorneys fees records after the issue of liability has been determined. The non-Soundview parties advised the Court in its motion papers that the attorneys fees requests are in the range of many millions of dollars. (Memo in Support of Motion for Attorney Fees at p. 5).[6] Therefore, the non-Soundview parties have complied with their Rule 54 obligations. In this regard, this Court is again requested to review the actual attorney billing records for the non-Soundview parties prior to making a final award, assuming that the Court finds Soundview liable for attorney fees.

### VI. SOUNDVIEW'S REFUSAL TO DROP ITS ANTITRUST CLAIM UNNECESSARILY MULTIPLIED THESE PROCEEDINGS

Soundview's failure to withdraw its antitrust claim in view of the non-infringement finding forced the Non-Soundview parties to move for summary judgment. Any possible antitrust claim was extinguished by the finding of non-infringement. Soundview refused to dismiss its antitrust claim and forced the non-Soundview parties to again move for summary judgment to dismiss that claim. In response to the summary judgment motion, Soundview offered no credible argument supporting its claim. The summary judgment motion and this Court's Order on the antitrust claim need not have occurred had Soundview dropped its antitrust claim and preserved that claim pending appeal of the

---

[6] Furthermore, Sharp expressly advised Soundview's counsel of the general amount of their individual attorneys fees demand. (*See*, Exh. 28).

finding of non-infringement.  On appeal, Soundview did not even pursue the ultimate

dismissal of its antitrust claim based on a finding of noninfringement as an issue for the

Federal Circuit to consider.

### VII.   CONCLUSION

Soundview knew or should have known that it had no good faith infringement

contentions or to continue its antitrust claim after the finding of infringement, the Non-

Soundview Parties respectfully request that the Court grant their motion awarding

reasonable attorneys fees in defending against Soundview's baseless infringement charge

as well those incurred in connection with briefing and arguing the antitrust issue.

The Non-Soundview Parties respectfully request that their motion for attorney fees

be granted, they be granted leave to submit their proofs of the actual amounts of attorney

fees incurred, and a schedule be entered for submitting proof of the actual amounts of

attorney fees incurred.

January 26, 2005

Of Counsel:

Richard L. DeLucia
Richard S. Gresalfi
Elizabeth A. Gardner
Thomas R. Makin
Kenyon & Kenyon
One Broadway
New York, NY
Tel: 212-425-7200
Fax: 212-425-5288

Vincent J. Belusko
Robert S. McArthur
MORRISON & FOERSTER LLP
555 W. Fifth Street
Los Angeles, CA 90013
Tel: 213-892-5200
Fax: 213-892-5454

Larry S. Nixon
Jeffry H. Nelson
Robert Adams
NIXON & VANDERHYE P.C.
1100 N. Glebe Road
Arlington, VA 22201
Tel: 703-816-4000
Fax: 703-816-4100

Peter J. Kadzik
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street NW
Washington, DC 20037-1526
Tel: 202-785-9700
Fax: 202-887-0689

Respectfully submitted,

By:    _____
       William M. Bloss
       KOSKOFF, KOSKOFF & BIEDER
       350 Fairfield Avenue
       Bridgeport, Connecticut 06604
       Tel: 203-336-4421
       Fax: 203-368-3244

       Jacqueline D. Bucar (CT01187)
       TYLER COOPER & ALCORN
       205 Church Street
       New Haven, CT 06509
       Tel: 203-784--8200
       Fax: 203-789-2133

       Brian E. Moran
       ROBINSON & COLE LLP
       Financial Centre
       695 East Main Street
       Stamford, CT 06904-2305
       Tel: 203-462-7500
       Fax:  203-462-7599

       Attorneys for Sony Electronics Inc. and
       Sony Corporation of America and on
       behalf of the Non-Soundview Parties

13

<u>**CERTIFICATION**</u>

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 8th

day of December, 2004 to all counsel and pro se parties of record, as follows:

Jacqueline D. Bucar, Esq.
Tyler Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT 06509-1910

Brian E. Moran, Esq.
Joseph L. Clasen, Esq.
Robinson & Cole, LLP
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Raymond Niro, Esq.
Robert P. Greenspoon, Esq.
Niro Scavone Haller & Niro
181 West Madison Street, Suite 4600
Chicago, Illinois 60602

John J. Bogdanski, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

Peter J. Kadzik, Esq.
Dickenstein Shapiro Morin & Oshinsky
3101 L Street N.W.
Washington, D.C. 20037

Robert W. Adams, Esq.
Larry Nixon, Esq.
Nixon & Vanderhye P.C.
1100 North Glebe Road, 8th Floor
Arlington, Virginia 22201-4714

Vincent J. Belusko, Esq.
Morrison & Foerster
555 West Fifth Street
Suite 3500
Los Angeles, California 90013-1024

Richard Gresalfi, Esq.
Richard I. Delucia, Esq.
Elizabeth Gardner, Esq.
Kenyon & Kenyon LLP
One Broadway
New York, N.Y. 10004

_____
William M. Bloss

15