UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SONY ELECTRONICS, INC. et al.,         )

                            )      LEAD DOCKET NO.
              Plaintiffs,   )      3:00-CV-00754 (JBA)
                            )      U.S.D.C./New Haven
      v.                     )
                            )      MEMBER CASE NOS.
                            )      3:00-CV-768 (JBA)
SOUNDVIEW TECHNOLOGIES, INC. et al.,  )      3:00-CV-981 (JBA)
                            )      ALL CASES
            Defendants.   )      January 11, 2005

**SOUNDVIEW'S OPPOSITION TO
THE SONY PARTIES' MOTION FOR ATTORNEY FEES**

**TO BE FILED UNDER SEAL**



## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE ATTORNEY-FEE REQUEST SHOULD BE DENIED AS UNTIMELY . . . . . . . . 5

III.    THE SONY PARTIES OFFER NO "CLEAR AND
        CONVINCING" EVIDENCE THAT THIS WAS AN "EXCEPTIONAL" CASE . . . . . 10

        A.    A Fee Award Under 35 U.S.C. § 285
              Requires More Than A Finding Of Non-Infringement . . . . . . . . . . . . . . . . . . . . 10

        B.    A Claim Construction That Properly
              Relies On Dictionary Definitions Is Not Frivolous . . . . . . . . . . . . . . . . . . . . . . 11

        C.    The Affirmance By The Federal Circuit
              Does Not Make This An Exceptional Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.     THE NON-INFRINGEMENT JUDGMENT
        DOES NOT MAKE THIS AN EXCEPTIONAL CASE . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      OTHER FACTORS SUPPORT SOUNDVIEW'S GOOD FAITH . . . . . . . . . . . . . . . . 17

        A.    Much Of The Television Manufacturing Industry Believed
              It Was Infringing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.    Soundview Applied The Same Scope To The Claims That
              The Patent Office Did . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.     SOUNDVIEW ACTED IN GOOD FAITH BEFORE FILING SUIT . . . . . . . . . . . . . . 20

        A.    Attacks On Major Elam Are Unfounded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        B.    Mr. Schmidt's Testimony Shows Soundview's Reasonable Belief
              That The V-Chip Standard Induces Implementation Of Separate
              Rating Signal Lines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        C.    Soundview's Pre-Filing Investigation Shows Soundview's Good Faith . . . . . . . 25

i

1.    Pre-Filing Investigations Are Not Relevant To
"Exceptional Case" Determinations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2.    Soundview Conducted A Reasonable Investigation  . . . . . . . . . . . . . . . 26

VII.    THE SONY PARTIES' LETTERS DO NOT PROVE BAD FAITH . . . . . . . . . . . . . . 28

VIII.    SOUNDVIEW'S CLAIM CONSTRUCTION
BEFORE THE SPECIAL MASTER WAS REASONABLE  . . . . . . . . . . . . . . . . . . . 29

IX.    SOUNDVIEW'S RESPONSE TO THE SECOND ANTITRUST
MOTION, AND NARROWING OF ISSUES FOR APPEAL, CANNOT
MAKE THE CASE "EXCEPTIONAL" AS A MATTER OF LAW  . . . . . . . . . . . . . . 32

X.    THE SONY PARTIES' REQUEST FOR
FEES UNDER SECTION 1927 MUST BE DENIED . . . . . . . . . . . . . . . . . . . . . . . 34

XI.    THE SONY PARTIES' OWN
CONDUCT MERITS DENYING ATTORNEY-FEES  . . . . . . . . . . . . . . . . . . . . . . . 35

XII.    THE SONY PARTIES FAILED TO DOCUMENT THEIR FEES . . . . . . . . . . . . . . . 38

XIII.    THE APPEAL COSTS ARE A RED HERRING . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XIV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page(s)

Anchor Wall Systems v. Rockwood Retaining Walls, Inc.,
340 F.3d 1298 (Fed. Cir. 2003) .................................................................................... 14

Antonious v. Spalding & Evenflo Companies,
275 F.3d 1066 (Fed. Cir. 2002) ......................................................................... 12, 16, 27

Ardisam, Inc. v. Ameristep, Inc.,
343 F. Supp. 2d 726 (W.D. Wisc. 2004) ..................................................................... 8, 9

Baldwin Hardware Corp., v. FrankSu Enterprise Corp.,
78 F.3d 550 (Fed. Cir. 1996) ........................................................................................... 7

Beckman Instruments, Inc. v. LKB Produkter, AB,
892 F.2d 1547 (Fed. Cir. 1989) ..................................................................................... 37

Biocore, Inc. v. Khosrowshahi,
2004 U.S. Dist. 2167 (D. Kan. 2004) .............................................................................. 7

Bloomstein v. Paramount Pictures Corp.,
1998 U.S. Dist. 20906 (N.D. Cal. 1998) ......................................................................... 5

Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.,
2005 U.S. Dist. LEXIS 33 (Fed. Cir. 2005) ..................................................... 10, 20, 24

Cambridge Products Ltd. v. Penn Nutrients Inc.,
962 F.2d 1048 (Fed. Cir. 1992) ..................................................................................... 10

Canfield v. Van Atta Buick/GMC Truck, Inc.,
127 F.3d 248 (2d Cir. 1997) ............................................................................................ 9

Carroll Touch, Inc. v. Electromechanical Systems, Inc.,
15 F.3d 1573 (Fed. Cir. 1993) ....................................................................................... 10

Contractors Association v. City of Philadelphia,
1996 U.S. Dist. LEXIS 8540 (E.D. Penn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cybor Corp. v. FAS Technologies, Inc.,
138 F.3d 1448 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Eltech Systems Corp. v. PPG Industrial, Inc.,,
903 F.2d 805 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.,
279 F.3d 1022 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Everpure, Inc. v. Cuno, Inc.,
705 F. Supp. 725 (D. Conn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fantasy Sports Properties Inc. v. Sportsline.com, inc.,
287 F.3d 1108 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Forcucci v. United States Fidelity and Guarantee Co.,
153 F.R.D. 484 (D. Mass. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Forest Laboratories, Inc. v. Abbott Laboratories,
339 F.3d 1324 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26

Frank's Casing Crew & Rental Tools, Inc. v. Weaterford International, Inc.,
389 F.3d 1370 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Hoffman-LaRoche, Inc. v. Invamed, Inc.,
213 F.3d 1359 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Horsford v. The Salvation Army,
2002 U.S. Dist. LEXIS 18453 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Inverness Medical Switzerland GmbH v. Warner Lambert Co.,
309 F.3d 1373 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

J.P. Stevens Co. v. Lex Tex Ltd., Inc.,
822 F.2d 1047 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Johnson Worldwide Associates v. Zebco Corporation,
175 F.3d 985 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

Mattel, Inc. v. Radio City Entertainment,
210 F.R.D. 504 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McNeil-PPC, Inc. v. Perrigo Co.,
337 F.3d 1362 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Metabolite Laboratories, Inc. v. Competitive Holdings, Inc.,
370 F.3d 1354, 1366 and 1372-73 (Fed. Cir. 2004 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

Motorola, Inc. v. Interdigital Technology Corp.,
121 F.3d 1461 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Multiform Desiccants, Inc. v. Medzam, Ltd.,
133 F.3d 1473 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Olin Corp. v. The Furukawa Electric Co., Ltd.,
2004 U.S. Dist. LEXIS 5487 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Overnite Transportation Co. v. Chicago Industrial Tire Co.,
697 F.2d 789 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Peterson v. BMI Refractories,
124 F.3d 1386 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,
182 F.3d 1356 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Phonometrics, Inc. v. Westin Hotel Co.,
350 F.3d 1242 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Power Mosfet Technologies, LLC v. Siemens AG,
378 F.3d 1396 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Professional Real Estate Investors v. Columbia Pictures Industries,
508 U.S. 49 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Q-Pharma, Inc. v. Andrew Jergens Co.,
360 F.3d 1295 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 16, 27, 29

Rambus Inc. v. Infineon Technologies AG,
318 F.3d 1081 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Revlon, Inc. v. Carson Products Co.,
803 F.2d 676 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rexnord Corp. v. Laitram Corp.,
274 F.3d 1336 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Roadway Express, Inc. v. Piper,
447 U.S. 752 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Salovaara v. Eckert,
222 F.3d 19 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Schering Corp. v. Amgen, Inc.,
198 F.R.D. 422 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Schlaifer Nance & Co. v. Estate of Warhol,
194 F.3d 323 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Sensonics, Inc. v. Aerosonic Corp.,
81 F.3d 1566 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Sony v. Soundview,
157 F. Supp. 2d 172 (D. Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 37

Sony v. Soundview,
157 F. Supp. 2d 180 (D. Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Sony v. Soundview,
157 F. Supp. 2d 190 (D. Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Sony v. Soundview,
225 F. Supp. 2d 224 (D. Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sparks v. Eastman Kodak Co.,
230 F.3d 1344 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Special Devices, Inc. v. OEA, Inc.,
269 F.3d 1340 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Tancredi v. Metropolitan Life Insurance Co.,
378 F.3d 220 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

TechSearch v. Intel,
Case No. C 98-03484 WHA (N.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Texas Digital Systems, Inc. v. Telegenix, Inc.,
308 F.3d 1193 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,
109 F.3d 739 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ulead Systems, Inc. v. Lex Computer & Mgt. Corp.,
351 F.3d 1139 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Union Pacific Resources Co. v. Chesapeake Energy Corp.,
236 F.3d 684 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 34

United States v. Shuch,
139 B.R. 57 (D. Conn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Warner Lambert Co. v. Purepac Pharmaceutical Co.,
2003 U.S. Dist. LEXIS 24369 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Waymark Corp. v. Caravello Family L.P.,
2001 U.S. Dist. LEXIS 25288 (S.D. Fl. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Waymark Corp. v. Porta Systems Corp.,
334 F.3d 1358 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## FEDERAL STATUTES AND OTHER SOURCES

35 U.S.C. § 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6, 8, 10, 11, 34, 36, 37, 38

28 U.S.C. §1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 34, 35, 37

Fed. R. Civ. P. 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Civ.P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Normally, Fed. R. Civ. P. 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 38

16 Berkeley Technology L.J. 1075 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## I.    **INTRODUCTION**

Hitachi (now a Soundview licensee) concluded that infringement existed:

Soundview U.S. P# 4,554,584; 11/19/85; Re-exam 4/07/98

Fundamental claim:   Use of closed captioning
                      channel to convey program
                      rating info.

> **EIA-608/EIA-744 INFRINGE CLAIM 1**

(Ex. A). Others agreed. Yet, the Sony parties now seek an unspecified amount of attorney fees because they claim it was frivolous for Soundview to assert claims for infringement of a patent that three-quarters of the television industry licensed. Those licensees include Philips (11.4% market share), Hitachi (1%), Pioneer (0.1%), Thomson (RCA) (17.0%), Matsushita (Panasonic) (5.8%), Sanyo (11%), Funai (8.2%), Daewoo (1.5%), LG (Zenith) (5.4%), Samsung (3.7%), JVC (3.3%), Orion (5.6%) and Tatung (0.0%). (Ex. B).

An award of attorneys' fees in patent cases under 35 U.S.C. § 285 is appropriate only when a case is found to be "exceptional." Exceptional means just that – something that is different from the norm and evidences bad faith or willful, wanton and reckless misconduct. See Section III.A, below. Here, neither Soundview nor its lawyers acted in bad faith — and most tv manufacturers represented by some of the biggest and best patent law firms in the country agreed that Soundview's position was reasonable and accepted licenses for fees totaling nearly $25 million.

The Sony parties now argue that the non-infringement result in this case was foreordained, in spite of the facts (conveniently ignored by Sony) that:

- Twelve other major television manufacturers thought there was enough risk of an adverse result to pay Soundview nearly $25 million for license rights (Ex. B);

1

- One major television manufacturer, Hitachi, admitted prior to taking a license: "EIA-608/EIA-744 INFRINGE CLAIM 1" of the Soundview patent, a conclusion it told the rest of the industry (Ex. A);

- Another major television manufacturer distributed a list of v-chip patents (written in Japanese) in which Soundview's patent was the only one marked with a symbol meaning "impossible to get around it" (Ex. C);

- The television manufacturers' trade association (EIA/CEMA) distributed lists of patents indicating that Soundview's was among those most likely to be infringed (Ex. D);

- The Patent Office held the same view of the scope of Soundview's patent that Soundview proposed (see section V.B, below).

Further, the "limited circumstances" under which an award of attorneys' fees is permitted are not present here. Forest Laboratories, Inc. v. Abbott Laboratories, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (discussing Senate Report, which states "it is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits."); Frank's Casing Crew & Rental Tools, Inc. v. Weaterford International, Inc., 389 F.3d. 1370, 1379 (Fed. Cir. 2004) (no fee award even though patent owner "persist[ed] in offering arguments dismissed by the district court's ... Markman Order").

The most the Sony parties can reasonably say is that a claim interpretation as to one claim element similar (though not identical) to theirs was ultimately adopted, and Soundview's was not. This led to the non-infringement judgment. Using an overabundance of *ad hominem* arguments, the Sony parties say that Soundview "knew or should have known" its claim interpretation on that claim element would be rejected. Why? Others felt it was the correct interpretation.

The fact is that claim interpretation is notoriously difficult and unpredictable – and even judges of the Federal Circuit frequently disagree on the proper interpretation of patent claims. As

a result, in patent infringement cases disposed of on summary judgment, the rate of reversal of district court claim interpretations is usually high. During the period between January 1, 1998 through April 30, 2000, "the Federal Circuit has changed the lower court's claim construction in 51% of summary judgment cases involving an express review of claim construction." Christian Chu, "Empirical Analysis of the Federal Circuit's Claim Construction Trends," 16 Berkeley Technology L.J. 1075, 1112, 1131-33 (2001); see also, Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1476 (Fed. Cir. 1998) ("[O]ne study shows that the plenary standard of review has produced reversal, in whole or in part, of almost 40% of all claim constructions since *Markman I.* ... **[T]his reversal rate, hovering near 50%, is the worst possible.**") (Rader, J., dissenting; emphasis added). To award attorney fees based on an erroneous claim construction – particularly one with which the majority of manufacturers apparently agreed – would be unjust in light of the unpredictability of the interpretation process.

Indeed, if losing on claim interpretation before the opportunity for appellate review means pursuit of that interpretation was frivolous, then the Sony parties themselves have much to answer for. The Special Master characterized interpretations by the ***Sony parties*** as "putting the claim language through the agony of torture." (Ex. F, Final Report 52). Of the 7 significant claim interpretation debates, the Sony parties ***lost*** all of their arguments on 6 of them: "data bus," "auxiliary circuit," "special set of characters," "rating select switch means," "blanking logic means" and alleged indefiniteness of claim 27 (See generally Ex. F; see summary chart, Ex. II). Thus, under their view, the Sony parties should pay 86% of Soundview's fees. Of course, it is not the law that erroneous claim construction automatically leads to fee awards. If a claim interpretation is supported

3

by the traditional canons of claim construction, it is not frivolous, even if a court ultimately disagrees with it. Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1301 (Fed. Cir. 2004) .

Soundview's claim interpretation was anything but frivolous, as most of the television manufacturing industry acknowledged by admitting there was infringement and/or by taking licenses. The Sony parties simply avoid addressing the reasoning Soundview offered for its claim interpretation – reasoning was firmly grounded in traditional canons of claim construction. Soundview used electronics definitions within scientific dictionaries to support its ordinary-meaning interpretation of the term "line" within the phrase "separate rating signal line."

Further, the Sony parties cannot rely on pre-suit activities to support a request for an "exceptional case" finding under 35 U.S.C. § 285. See section VI.C.1, below. Yet, most of their argument is devoted to seeking recourse for Soundview's supposedly-baseless pre-suit licensing efforts. (E.g., Sony Br. 5-11, 21-13). Such pre-suit activities are irrelevant to the question presented, and Soundview's pre-filing investigation was reasonable. See section VI.C.2, below.

The standard for a fee award under 28 U.S.C. §1927 is even more demanding. The Sony parties have not come close to satisfying that legal standard. See section X, below. There was nothing frivolous about Soundview explaining why its antitrust claims should survive after the non-infringement ruling — patent licenses are considered goods in commerce subject to the forces of supply and demand, even when a court later determines in hindsight the license may not be needed. And it was *Sony*, not Soundview, who insisted on an extra round of antitrust briefing.

We explain first why the Sony parties' fee motion is untimely and should be denied outright for that reason alone. Then we show why Soundview was not acting in bad faith to assert a claim for infringement of a patent that the majority of the television industry also believed was infringed.

4

## II.    THE ATTORNEY-FEE REQUEST SHOULD BE DENIED AS UNTIMELY

In this case, as explained below, the Court's local rule set an October 7, 2004 deadline for filing post-judgment motions seeking any form of attorney fees. In the weeks leading up to the October 7, 2004 deadline, the Sony parties wrote a series of letters to Soundview threatening that they would seek attorney-fees. (Ex. G). The possibility of filing such a motion was clearly something they had on their minds. In each case, Soundview wrote back, explaining that the merits of the case had been decided, and the most efficient and least expensive course of action for all parties was to consider the case closed. (E.g., Ex. H).

What is important now is that the Sony parties had enough time to write intimidating letters to Soundview, but they never lifted one finger to ask the Court for an enlargement of the looming October 7 deadline. A "party seeking nearly one half-million dollars in attorney's fees and other costs should be especially meticulous in complying with the applicable rules, because an untimely filing could preclude recovery altogether." <u>Contractors Ass'n</u> v. <u>City of Philadelphia</u>, 1996 U.S. Dist LEXIS 8540 at *14 (E.D. Penn. 1996). When the October 7 deadline came and went with no fee motion on file, Soundview reasonably believed the Sony parties had gone away.

The Rule 54(b) judgment on which Sony's fee motion is based is a final judgment, subject to final judgment deadlines. Normally, Fed. R. Civ. P. 54(d) would allow fourteen days after judgment for the filing of attorney fee motions. See <u>Bloomstein</u> v. <u>Paramount Pictures Corp.</u>, 1998 U.S. Dist. 20906, at *5-*6 (N.D. Cal. 1998) (denying motion brought under 35 U.S.C. § 285 because it did not comply with the time limits under Fed. R. Civ. P. 54(d)). The Connecticut local rules are more generous. Conn. LR 11(a) provides:

5

## SANCTIONS

### (a) Motion for Attorneys' Fees and / or Sanctions

Motions for attorneys' fees or sanctions shall be filed with the Clerk and served on opposing parties within 30 days of the entry of judgment. *Any motions not complying with this rule shall be denied*.

(Conn. L.R. 11, emphasis added). This rule clearly applies to motions brought under *both* of the statutory sections the Sony parties cite: 35 U.S.C. § 285 *and 28 U.S.C. § 1927.* See Waymark Corp. v. Caravello Family L.P., 2001 U.S. Dist. LEXIS 25288, at *3 (S.D. Fl. 2001) (applying similar local rule to sections 285 and 1927).

Here, the Court extended the deadline prior to the appeal. The Court entered a September 25, 2003 Order of Stay Pending Appeal. (Ex. I). That Order of Stay stayed remaining claims, motions, filing of bills of costs, and the filing of any request for further relief "pending appeal of the partial final judgment." Hence, the clock started ticking for any fee or sanctions motions upon termination of the appeal. TechSearch v. Intel, Case No. C 98-03484 WHA, December 17, 2002 Order at 3-5 (Ex. J) (in patent case, denying prevailing party's fee motion as untimely because filed more than fourteen days after termination of the appeal). By operation of Rule 11 of the Connecticut Local Rules, the Sony parties had a full thirty days after termination of the appeal to file their motion. See Forcucci v. United States Fidelity and Guarantee Co., 153 F.R.D. 484, 486 (D. Mass. 1994) (motion under 28 U.S.C. § 1927 untimely when filed 29 days after mandate issued); compare Overnite Transportation Co. v. Chicago Indus. Tire Co., 697 F.2d 789, 793 (7th Cir. 1983) (section 1927 motion late when filed after termination of the appeal).

The latest possible date reflecting termination of the appeal is September 7, 2004. On that date, the appellate mandate returned to this Court. See Forcucci, above; Overnite, above; compare Biocore, Inc. v. Khosrowshahi, 2004 U.S. Dist. 2167, at *7 (D. Kan. 2004) (using date appellate mandate returned to district court to calculate when renewed fee motion was due). Thirty days after September 7 was October 7, 2004.

The Sony parties did not file their motion until December 8, 2004 — over two months after the deadline. Under controlling law, their motion should be denied for that reason alone.

Procedural issues such as timing are governed by regional circuit law. Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 744 (Fed. Cir. 1997); Baldwin Hardware Corp., v. FrankSu Enterprise Corp., 78 F.3d 550, 559-60 (Fed. Cir. 1996). Here, the Second Circuit expressly forbids extending attorney-fee-motion filing deadlines absent a finding, on motion, of "excusable neglect." See Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 227-28 (2d Cir. 2004).

Tancredi requires denial of the motion. In Tancredi, just like here, a petitioner filed its fee motion *after* the deadline had already passed. Id. at 226. In Tancredi, just like here, *after* the petitioner was already late, the district court set a new deadline for filing such motions, and the petitioner complied with the new deadline. Id. at 226. In this case, the Court's Scheduling Order of November 9, 2004 setting a December 8 deadline for fee motions was just like the enlargement of time order in Tancredi that the Second Circuit held to be an abuse of discretion: it was entered *after* the Sony parties were already late, and in the absence of any motion requesting an extension. Finally, just like here, the petitioner in Tancredi made no motion (and the district court made no

7

findings) on "excusable neglect" under Fed. R. Civ. P. 6. Id. at 226.  The Second Circuit held that

on these facts, it was an *abuse of discretion* for the district court to entertain the fee motion:

> None of these cases . . . suggests that "order of the court" [in Rule 54(d)] confers on
> district courts untrammeled discretion to extend the time to file a fee motion. * * *
> [A]bsent a statute or order of the court *such as a local rule,* the district court was
> required to find 'excusable neglect' under Rule 6(b)(2) to extend the time to move
> for attorneys' fees after the expiration of Rule 54's fourteen-day deadline.

Id. at 227-28 (emphasis added).  Here, the Sony parties had a very generous 30-day period under the

local rule within which to file any motion or any request for an extension.

It is especially important that the Sony parties would have had to file any Rule 6 motion for

enlargement of time *before* the October 7 deadline. See Tancredi; Ardisam, Inc. v. Ameristep, Inc.,

343 F. Supp.2d 726, 730 (W.D. Wisc. 2004).  In Ardisam — a patent case involving 35 U.S.C. § 285

— the court rebuked a prevailing accused infringer for filing its Rule 6 request for enlargement of

time after the fee-motion-deadline had already passed:

> What is most troublesome with defendants' motion to extend the time to file a motion
> for attorney fees is that they filed their joint motion under *Fed. R. Civ. P. 6(b)(2)*
> *after* they filed their motion for attorney fees. . . . [I]t is difficult to understand why
> defendants did not file a *Rule 6(b)(2)* motion as soon as they realized that they would
> miss the 14-day deadline, which was sometime in August 2004. Instead, defendants
> waited to file their motion to extend until October, after plaintiffs had raised the
> timeliness issue in their brief opposing defendants' motion for attorney fees. . . . Had
> defendants filed their *Rule 6(b)(2)* motion before filing their motion for attorney fees,
> plaintiffs would have known whether to raise the timeliness argument in their brief
> opposing defendants' motion for attorney fees. Defendants prejudiced plaintiffs by
> dodging the timeliness argument.

Id. (emphasis in original).  The facts here are even more compelling than in Ardisam.  Here, the Sony

parties have *never* filed a Rule 6(b)(2) motion.  Absent such a motion, and findings of "excusable

neglect" under the controlling authority of Tancredi the deadline is October 7, 2004, not the later

date set forth in the Court's November 9, 2004 Order.

Nor are the Sony parties permitted to advance their "excusable neglect" arguments (if they have any) in their reply brief. Horsford v. The Salvation Army, 2002 U.S. Dist. LEXIS 18453, at *5 (S.D.N.Y. 2002) (denying fee motion as untimely because "defendants never filed a motion for enlargement, but merely raised their [excusable neglect] arguments in their reply brief."). Where, as here, a movant merely failed to follow the clear dictates of a court rule, any claim of excusable neglect should be rejected. Mattel, Inc. v. Radio City Entertainment, 210 F.R.D. 504, 505 (S.D.N.Y. 2002), citing Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250-51 (2d Cir. 1997).

The Sony parties' reliance on the date for filing fee requests set forth in the district court's scheduling order does not vindicate their untimeliness because, just as in Tancredi and Ardisam, the Sony parties allowed the October 7, 2004 deadline set by Local Rule 11 to pass without making any request for any extension of time. Under the Connecticut local rules, since the motion is untimely, it "shall be denied."

Patent cases from other circuits permitting an otherwise untimely fee motion exist, but involve mitigating factors absent here. In Schering Corp. v. Amgen, Inc., 198 F.R.D. 422, 428 (D. Del. 2001), for example, the prevailing party *requested* the losing party's consent to additional time *before the due date*, but the losing party refused to consent. As a result, the prevailing party ended up filing its fee motion one day late. Applying the Rule 6 "excusable neglect" factors, the Schering court observed the losing party refused a reasonable request for a short extension, effectively causing the prevailing party's untimeliness. Here, in contrast, the Sony parties never asked Soundview to consent to an enlargement of time; instead they simply filed their motion, perhaps hoping Soundview would not complain about untimeliness. The Sony parties (unlike the Schering petitioner) have not

9

offered any "excusable neglect" explanations and were late by two months, not the <u>Schering</u> petitioner's mere one day. Cases like <u>Schering</u>, therefore, do not apply.

**III.    THE SONY PARTIES OFFER NO "CLEAR AND <u>CONVINCING" EVIDENCE THAT THIS WAS AN "EXCEPTIONAL" CASE</u>**

  **A.    A Fee Award Under 35 U.S.C. § 285
       Requires More Than A Finding Of Non-Infringement**

"In the case of awards to prevailing accused infringers ... 'exceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent." <u>Cambridge Prods. Ltd.</u> v. <u>Penn Nutrients Inc.</u>, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992). "As the part[ies] moving for attorney fees, the burden [is] on [defendants] to prove the exceptional nature of the case by clear and convincing evidence." <u>Carroll Touch, Inc.</u> v. <u>Electromechanical Systems, Inc.</u>, 15 F.3d 1573, 1584 (Fed. Cir. 1993). "It is only after a specific finding of exceptional circumstances has been made that the discretion to award attorneys' fees can be exercised." <u>J.P. Stevens Co.</u> v. <u>Lex Tex Ltd., Inc.</u>, 822 F.2d 1047, 1050-51 (Fed. Cir. 1987).

The Federal Circuit very recently confirmed that a prevailing accused infringer in these circumstances is entitled to sanctions only if it can prove ***both*** of two requirements: "(1) the litigation is brought in subjective bad faith and (2) the litigation is objectively baseless." <u>Brooks Furniture</u> <u>Mfg., Inc.</u> v. <u>Dutailier Int'l, Inc.</u>, 2005 U.S. Dist. LEXIS 33, *7 (Fed. Cir. 2005) (citing <u>Professional</u> <u>Real Estate Investors</u> v. <u>Columbia Pictures Industries</u>, 508 U.S. 49, 60-61 (1993)). In ascertaining whether there is both subjective bad faith and objective baselessness, a court should only make an award of attorneys fees if a "gross injustice" will be done absent the award. <u>Revlon, Inc.</u> v. <u>Carson</u> <u>Prods. Co.</u>, 803 F.2d 676, 679 (Fed. Cir. 1986) ("attorney fees are not to be routinely assessed

10

against a losing party in litigation in order to avoid penalizing a party for merely defending or prosecuting a lawsuit").

> [T]he record reflects that McNeil's experts advanced a plausible theory of infringement of those claims as well. ... The district court found that [infringement] ... *appears to have turned merely on the court's construction of [a claim ] term.*

McNeil-PPC, Inc. v. Perrigo Co., 337 F.3d 1362, 1372-73 (Fed. Cir. 2003) (emphasis added). Here, just as in McNeil, the question turned on the court's claim construction. Indeed, judges of the Federal Circuit sometimes disagree on the meaning of claim terms – see, e.g., Metabolite Laboratories, Inc. v. Competitive Holdings, Inc., 370 F.3d 1354, 1366 and 1372-73 (Fed. Cir. 2004).

In short, a losing patentee who presents a novel but plausible theory of recovery does not have to compensate the other side under the "exceptional case" statute. Olin Corp. v. The Furukawa Electric Co., Ltd., 2004 U.S. Dist. LEXIS 5487, at *3-*5 (D. Conn. 2004). Even a paucity of authority supporting an infringement claim, and imprecision in making the claim, does not support a section 285 violation. Everpure, Inc. v. Cuno, Inc., 705 F. Supp. 725, 732 (D. Conn. 1988).

Indeed, the only case the Sony parties cite in which a patentee's claim interpretation was deemed "exceptional" before it was reviewed on appeal is Eltech Systems Corp. v. PPG Indus., Inc., 903 F.2d 805 (Fed. Cir. 1990). Eltech is clearly distinguishable, since the patentee tried to "attack on appeal" the lower court's claim interpretation, even though the lower court's interpretation was required by the patentee's own contentions during the underlying lawsuit. Id. at 809.

**B.     A Claim Construction That Properly Relies On Dictionary Definitions Is Not Frivolous**

The Sony parties' argument that Soundview pursued this case in bad faith comes down to their allegation that Soundview's claim construction of "separate rating signal line" was eventually

found to be incorrect. But, a district court must consider the patent owner's claim construction in deciding whether a claim interpretation was reasonable, not the claim construction later determined by the district court. <u>Antonious</u> v. <u>Spalding & Evenflo Companies</u>, 275 F.3d 1066, 1073 (Fed. Cir. 2002). A claim construction is only frivolous when that construction is not founded on traditional canons of claim construction. As the Federal Circuit held:

> Claim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language. In this case, however, it is not for us to determine whether Q-Pharma's pre-filing interpretation of the asserted claims was correct, but only whether it was frivolous. See *Antonious*, 275 F.3d at 1073. We conclude that it was not, *for Q-Pharma's claim interpretation, while broad, followed the standard canons of claim construction and was reasonably supported by the intrinsic record*.

<u>Q-Pharma, Inc.</u> v. <u>Andrew Jergens Co.</u>, 360 F.3d 1295, 1301 (Fed. Cir. 2004) (emphasis added).

One way to show a pre-filing claim interpretation "followed the standard canons of claim construction," and hence was non-frivolous, is to show that it relied on appropriate dictionary definitions to explain "ordinary meaning." In <u>Antonious</u>, the Federal Circuit noted that "in light of the alternative *dictionary definition* and the quoted passage from the 279 patent, the claim construction that [the patentee] advanced in the district court was not frivolous." <u>Id.</u> (emphasis added).

Again, the test of whether there is bad faith supporting an exceptional case finding takes into account the *patentee's* view of the scope of the claims.

> Medzam states that Multiform engaged in bad faith litigation because Multiform "admitted" that Medzam's product did not have a "degradable" envelope. Multiform responds that it always had the good faith belief that Medzam's product was "degradable" in terms of the '266 patent. We agree that Medzam mischaracterizes Multiform's "admission," and that bad faith cannot be found on this issue.

<u>Multiform Desiccants, Inc.</u> v. <u>Medzam, Ltd.</u>, 133 F.3d 1473, 1482 (Fed. Cir. 1998).

**C.    The Affirmance By The Federal Circuit
Does Not Make This An Exceptional Case**

The Federal Circuit has expressly held that an affirmance without opinion cannot be used to

bolster a claim of frivolousness, especially when the central issue is claim interpretation:

> Such a disposition indicates our view that the appeal lacked merit, but not necessarily
> that it was frivolous.
>
>         * * *
>
>     If we were to award damages for a frivolous appeal in all cases which we felt
> had little merit, . . . . parties who lost their cases in a lower tribunal would be
> seriously deterred from pursuing an appeal, which, to the intermediate appellate court
> level, is usually a matter of right. . . . . *This is especially so, in cases such as the
> present one, when the issue appealed is claim construction, one of law which this
> court reviews de novo.*

Sparks v. Eastman Kodak Co., 230 F.3d 1344, 1345-46 (Fed. Cir. 2000) (emphasis added).

In fact, the significance of the appeal is exactly the opposite of what the Sony parties contend.

In Phonometrics, Inc. v. Westin Hotel Co., 350 F.3d 1242, 1245, 1249-50 (Fed. Cir. 2003), the

Federal Circuit held the patentee accountable after 1998 for its bad faith pursuit of an incorrect claim

interpretation *only as of the date of the 1998 appellate court opinion striking it down*.  Here, of

course, there was no appellate court decision until the very recent Federal Circuit affirmance.  Before

that date, Soundview's pursuit of its claim construction positions cannot be attacked as frivolous.

**IV.    THE NON-INFRINGEMENT JUDGMENT
DOES NOT MAKE THIS AN EXCEPTIONAL CASE**

The core remaining issue is whether Soundview's claim construction, though found to be

incorrect, was reasonable — i.e., based on traditional canons of claim interpretation. See section

III.B, above.  The Sony parties' attack Soundview's pre-filing licensing activities (Sony Br. 5-11),

cite unflattering media commentary about Soundview's separately-incorporated parent company

(Sony Br. 7) and misrepresent co-inventor Carl Elam's view of the breadth of his claims (see section

VI.A, below). These sideshows are irrelevant as a matter of law and must be ignored. See section

VI.C.1, below. This case came down to whether a "line" can be understood as multiple conductors.

Soundview said yes, the Sony parties said no, and the Court eventually decided. Sony v. Soundview,

225 F. Supp. 2d 224 (D. Conn. 2002). The Court itself stated at oral argument that its task "is not

easy." (Ex. E, Transcript at 95).

Under traditional canons of claim construction, a claim term ordinarily should be construed

to encompass *all* of its multiple meanings which are consistent with usage in the patent. Texas

Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1203 (Fed. Cir. 2002). Where (as here) a

claim term such as "rating signal line" is susceptible to two possible definitions, the term may be

construed to encompass both alternatives and should be so construed absent some indication that

only one meaning was intended:

> [A] word that has an ordinary meaning encompassing two relevant alternatives may
> be construed to encompass both alternatives. *Rexnord, 274 F.3d at 1343, 60
> USPQ2d at 1855* (holding that the claim term "portion" may be interpreted to
> encompass both "separate" or "integral").

Inverness Medical Switzerland GmbH v. Warner Lambert Co., 309 F.3d 1373, 1379 (Fed. Cir.

2002); see also, Johnson Worldwide Associates v. Zebco Corporation, 175 F.3d at 991 (Fed. Cir.

1999) ("Varied use of a disputed term in the written description demonstrates the breadth of the term

rather than providing a limited definition."); Anchor Wall Systems v. Rockwood Retaining Walls,

Inc., 340 F.3d at 1308  (Fed. Cir. 2003) (same). The Federal Circuit in Inverness went on to hold

that *because the specification gave examples consistent with both meanings of the disputed claim

term "on"* as both "in contact with that which supports from beneath" and "indicat[ing] presence

within," the term "on" had to be interpreted to encompass both definitions. 309 F.3d at 1379 & n.4.

In <u>Johnson</u>, similarly, the Federal Circuit held: "That the term 'heading' is used at various points in the written description to refer to both the direction of the trolling motor and the boat is simply not a special and particular definition created by the patent applicant." 175 F.3d at 991.

As permitted, Soundview relied on dictionary definitions for its view of the ordinary meaning of "separate rating signal line." Specifically, Soundview looked to the definition of "line" (in the electrical sense) in a scientific dictionary, and the definition of "separate" in a standard dictionary.

The <u>McGraw-Hill Dictionary of Scientific and Technical Terms</u> defines "line" by incorporating the definition of "transmission line," which is "A system of conductors, such as wires, waveguides, or coaxial cables, suitable for conducting electric power or signals efficiently between two or more terminals" (Ex. K). Thus, a "line" in this technological context is "a system of conductors, such as wires ..., suitable for conducting electric ... signals." This is consistent with multi-conductor "lines" with which we are all familiar. A telephone line, for example, has two conductors; a household electrical power line has three conductors; and a computer network line has four conductors (Ex. K). A "line" can be one *or more* conductors in its plain and ordinary technological usage.

The plain and ordinary meaning of "separate" can be found in general dictionaries. The <u>Webster's Ninth New Collegiate Dictionary</u> defines "separate" (the adjective) as "dissimilar in nature or identity *syn* see DISTINCT" (Ex. L). This is also consistent with familiar usage, as when one considers that words like "tree" and "queen" are separate words, even though they use common letters. These words are "dissimilar in nature or identity."

Thus, it was reasonable for Soundview to argue that the plain and ordinary meaning of "separate rating signal lines" is "a set of one or more conductors for each rating, where the set is

distinct from (i.e., dissimilar to) those sets corresponding to other ratings." This construction accurately described the patent's preferred embodiment. Soundview's *two* infringement experts (Messrs. Gafford and Snell) were comfortable with it. And, under this construction, there was never any question that the accused television microprocessors decode ratings into "separate rating signal lines." It was beyond dispute that each of the Sony parties' television sets used a distinct set of conductors from one rating to the other. Since Soundview's construction was based on traditional canons of claim construction, it was reasonable and non-frivolous. See Q-Pharma and Antonious, discussed in section III.B, above. Hence, Soundview did not pursue this case in bad faith.

The Sony parties prevailed because this Court rejected Soundview's claim construction, and that result was affirmed. This Court ruled that the accused television sets did not infringe because they did not use a single pulse on a single different dedicated conductor for each rating. In the process, the Court found "no textual support" in the patent for Soundview's contention that the pattern of 0s and 1s on a set of conductors representing a rating might be considered the rating signal line. However, this Court might have concluded otherwise if it gave credit to the possibility (as Soundview did and as scientific dictionaries support) that a "line" might properly be viewed as a *set* of conductors. The patent itself provides such textual support, just as in Inverness and Johnson. Specifically, Fig. 1 of the patent (Ex. M) shows an ASCII character detector 2A that has a single output line 56. Numeral 56 is referred to (at different points in the specification) as "output line 56" (5:67), as "rating lines 56" (6:60), as "six lines of cable 56" (7:13, 7:39-40), and as "cable 56" (8:40). The patent also states, "In the embodiment which was tested, six characters are decoded and the output line 56 has six conductors." (5:67-68).

16

Hence, the patent itself supports the notion that a "line" may be viewed as a *set* of conductors (e.g., six conductors). When combined with the ordinary definition of "separate" as "distinct", Soundview's claim construction logically follows: "a set of one or more conductors for each rating, where the set is distinct from (i.e., dissimilar to) those sets corresponding to other ratings." At a minimum, it was reasonable for Soundview to argue as much because even if part of the patent supported a narrow definition of "rating signal line," other parts of the patent gave Soundview textual support to contend a broader definition.

## V.   OTHER FACTORS SUPPORT SOUNDVIEW'S GOOD FAITH

Not only do the Sony parties ignore the substantial legal basis for Soundview's claim construction; they also ignore the evidence that most of the television industry itself perceived a likelihood that Soundview would prevail on the merits.

### A.   Much Of The Television Manufacturing Industry Believed It Was Infringing

Other television manufacturers admitted they believed that practice of the v-chip standard infringed the Soundview patent. A trade association patent search revealed the existence of forty-three patents in the content blocking area (Ex. D). Of these, the EIA lawyer noted that six of those patents "are more easily infringed" in the context of the new EIA standards (Ex. D). Number one of those likely to be infringed was the '584 patent (Ex. D). One Japanese company (possibly Sony) created a list of v-chip patents and identified only the '584 patent with a symbol (a circle within a circle) meaning "unavoidable" or "impossible to get around it" (Ex. C). In the course of the EIA meetings, Hitachi (now a licensee) concluded:

Soundview U.S. P# 4,554,584; 11/19/85; Re-exam 4/07/98

Fundamental claim:  Use of closed captioning

17