UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SONY ELECTRONICS, INC. et al., ) | AUGUST 31, 2005 |
| Plaintiffs, ) | |
| ) | |
| v. ) | LEAD DOCKET NO. |
| ) | 3:00-CV-00754 (JBA) |
| SOUNDVIEW TECHNOLOGIES, INC. et al., ) | U.S.D.C./New Haven |
| Defendants. ) | ALL CASES |

## SOUNDVIEW'S RESPONSE TO SHARP'S FEE CALCULATION

CEA/EIA and Mitsubishi presented Soundview with far more reasonable attorney fee calculations than Sharp did. Soundview settled with CEA/EIA and Mitsubishi. Sharp's claim of **excessive** fees is an obstacle to settlement, and the final closing of this case.[1]

Sharp's $58,000 fee calculation is excessive and unreasonable. Soundview objects. Although Soundview intends to appeal the underlying award, Soundview calculates here what the maximum reasonable fee would have been under the circumstances. Under Soundview's calculation, a reasonable fee would not have exceeded $30,000. Alternatively, if the Court gives due regard to Soundview's

---

[1] Sharp elected not to file a notice of appeal on the issues it lost in the Court's July 12, 2005 decisions. That means Sharp's Section 1927 fee calculation is the last remaining issue for this Court, or the Court of Appeals, to address. Under settled law, Soundview's appeal of the fee award and calculation becomes ripe upon the Court's entry of a judgment containing the final calculation.

October 2002 efforts to **prevent** unnecessary proceedings, the Court should calculate that no fees are owed.

In its July 12 Order, this Court held that Soundview vexatiously multiplied the proceedings by continuing to pursue its antitrust claim after the noninfringement ruling. The Court awarded sanctions under 28 U.S.C. §1927. This statute covers only those who **multipl[y] the proceedings** in any case unreasonably and vexatiously and is limited to **excess** costs, expenses and attorneys fees **reasonably** incurred because of such conduct. 28 U.S.C. 1927 (emphasis added). Multiplies means that the vexatious conduct must result in proceedings that would not have been conducted otherwise." Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997).

We believe it will be helpful for the Court to have in mind Soundview's basis for appeal as it considers the calculation issues presented by Sharp. "To award sanctions [under Section 1927] when an issue of first impression is at stake may 'deter persons with colorable claims from pursuing those claims,' which care must be taken to avoid." Abbott v. United States, 2001 U.S. Dist. LEXIS 7569, at *3 (N.D.N.Y. Apr. 30, 2001). On appeal, Soundview will advance its reasons why it was not frivolous to pursue the antitrust case after the noninfringement finding. It was an issue of first impression whether a patentee retains antitrust standing to seek relief from a conspiracy to boycott its licensing overtures, where the patent is *eventually* held noninfringed. Soundview's arguments will point out that this Court specifically found the infringement

assertion non-frivolous; consequently, there existed a legitimate market for licenses before the marketplace became aware of the noninfringement ruling.

Of course, Soundview's arguments below assume the Court's *award* of fees stands. These arguments explain two alternative *calculations* of that award as alternatives to Sharp's excessive claim.

## I. ROBERT W. ADAMS' TIME ENTRIES ARE EXCESSIVE

Sharp claims entitlement to $58,000 in fees for reviewing and commenting on 30 pages of text written by others, and for writing 4 pages of its own. There must be a reduction. To wit, Sharp's invoices reflect activities related to the following court filings:

| |
|---|
| The Non-Soundview Parties' opening summary judgment brief addressing antitrust injury (Exhibit A) (10 pages of text, authored by Sony counsel) |
| Soundview's opposition brief (Filed under seal at Dkt. No. 444) (11 pages of text) |
| The Non-Soundview Parties' summary judgment reply (Exhibit B) (9 pages of text, authored by Sony counsel) |
| Sharp's supplemental reply (Exhibit C) (4 pages of text). |

While some billing is to be expected, Robert W. Adams' time entries are clearly excessive. The invoices show that Mr. Adams billed as follows:

| |
|---|
| **51 hours** to read, research and comment on Sony's counsel's work product in generating an opening summary judgment brief (Invoice Nos. 375397, 378375) |
| **7.5 hours** to read and comment on Soundview's opposition summary judgment brief (Invoice No. 382167) |
| **43.25** hours to comment on Sony's counsel's reply brief and to generate a Sharp supplemental reply brief (Invoice No. 382167). |

3

Fifty-one hours is *more than one billed week* to read and comment on someone else's ten-page brief, which itself was the *second* brief Sony wrote covering largely the same issues.  Soundview simply cannot agree that such billings were reasonable.  Indeed such fees are facially unreasonable, and the Supreme Court requires the Court reduce the claim accordingly:

> Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." (Citation omitted).

Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

Mr. Adams' 7.5 hours reading and commenting on Soundview's brief is a good benchmark of what might have been "reasonable" with regard to reading and commenting on the Sony opening brief.  Doubling this to give Sharp every benefit of the doubt results in appropriate billings by Mr. Adams of 15 hours for this activity.  For the later activity in commenting on a reply brief and writing a 4-page supplement, reasonable billings should not have exceeded 20 hours.

In sum, where Mr. Adams invoiced 94.25 hours (51 + 43.25 as indicated in the top and bottom rows of the summary table above), that should be reduced to 35 hours – a reduction of 59.25 hours.  At Mr. Adams' hourly rate of $470, this results in a

reduction of just under $28,000.  The Court should accordingly reduce the $58,000 request to $30,000. See, e.g., Anglo-Danish Fibre Indus.  v.. Columbian Rope Co., 2003 U.S. Dist. LEXIS 10386, 28-29 (D. Tenn. 2003) ("The court simply does not see how experienced partners in a law firm could reasonably spend over 28 hours preparing this application, especially when supplied with three days' worth of associate research and a full set of billing printouts. Accordingly, Corvette's 26.7 hours are reduced by 75% to 6.68 hours.").

## II.  SHARP SHOWS NO "EXCESS" FEES CAUSED BY SOUNDVIEW

Alternatively, since Sharp's invoices begin in November 2002 – *after* Soundview had taken significant steps to *prevent* the parties from incurring excess fees – Sharp has failed to present any evidence of excess fees caused by Soundview. Namely, at an October 16, 2002 status conference before this Court, Soundview's counsel attempted to prevent, not cause, unnecessary expenditures.  Soundview proposed staying antitrust issues while infringement issues were being appealed.  The following exchange occurred:

MR. SOLON [Soundview counsel]: You think the Soundview – *our view is it's better to stay the Soundview antitrust claim* because for you to rule on it under one set of circumstances that we hope will change on appeal is not going to be a good use of everybody's briefing time, and they're not – *the people in this room won't spend any money on the antitrust case if we're on appeal on the issue of infringement*, which it seems to me satisfies what at least Sony is urging.

   * * *

5

>    MR. ADAMS [Sharp counsel]: This motion, Sony motion, as narrowed by the Court's suggestion in its order, is a motion that's going to need to be filed no matter what happens, and it's better to do it now, is why Sharp recommends that approach, it's better to do it now than put it off until later, and that's why we believe that would be the most cost effective procedure.
>
>    THE COURT: And that's because your theory is a simple one of there is no antitrust liability without infringement.
>
>    MR. GRESALFI [Sony counsel]: Yes, your Honor.

(Exhibit D at 22-24, emphasis added).  Hence, at the October 2002 hearing, Soundview advocated avoiding the need for any party (including Sharp) to spend any more funds addressing the antitrust issues.  Soundview's proposal was not accepted.

All of Sharp's invoices submitted with its calculation reflect work performed after the October 2002 hearing.  Hence, under the standard which the Court must apply under Section 1927, *Soundview* was not the cause of any "excess" billings.  Those billings resulted from Sharp itself (among others) advocating an additional round of briefing, over Soundview's objection.  Since Sharp presented no evidence of any billings reflecting work performed between the noninfringement ruling and Soundview's October 2002 request to stay antitrust proceedings, the correct calculation of the fee award is zero.

**III.     SHARP'S FEES GROSSLY EXCEED COMPARABLE BENCHMARKS**

Soundview's fee calculations are also consistent with the fees sought by another non-Soundview party: the Consumer Electronics Association. In the same time period covered by Sharp's invoices (i.e., through March 2003), the CEA/EIA attorneys billed only $14,189.40 for their equivalent review and comment on the Sony party's antitrust work product. (Exhibit E, sum of first four entries reflecting work through April 2003). Obviously, the CEA/EIA *trade association* had a greater interest in avoiding antitrust liability than Sharp, but its lawyers (quite reasonably) billed much less for the same review and comment undertaken by Sharp's lawyers.

## IV. **CONCLUSION**

For the foregoing reasons, the Court should calculate owed fees to be a maximum of $30,000. Alternatively, if the Court agrees that Sharp presented no evidence of any expenditures in the relevant award-window, the Court should calculate owed fees to be zero.

DEFENDANT,
SOUNDVIEW TECHNOLOGIES, INC.


By  ___/s/ John J. Bogdanski___
John J. Bogdanski (ct06217)
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, Connecticut 06114
(860) 249-1361
Fax: (860) 522-9549

Raymond P. Niro (ct18107)
John C. Janka (ct20463)
Robert P. Greenspoon (ct21736)
Paul C. Gibbons (ct18826)
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
Phone: (312) 236-0733

Attorneys for Soundview Technologies, Inc.

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that a copy of the foregoing **SOUNDVIEW'S RESPONSE TO SHARP'S FEE CALCULATION** was served upon lead counsel for the below listed parties by facsimile and first class mail (on all lead patent counsel) on August 31, 2005:

                                                              /s/ John J. Bogdanski
                                                                 John J. Bogdanski

## SERVICE LIST

| **Counsel for Sharp Electronics Corporation** ||
|---|---|
| Counsel | Local Counsel |
| Robert W. Adams<br>U.S. Mickey Gill<br>Nixon & Vanderhye, PC<br>1100 North Glebe Road, 8th Floor<br>Arlington, VA  22201-4714<br>Tel:   703-816-4000<br>Fax:   703-816-4100<br>email: rwa@nixonvan.com (Adams) | Connecticut<br>William M. Bloss<br>Alinor C. Sterling<br>Jacobs, Grudberg, Belt & Dow PC<br>350 Orange Street<br>New Haven, CT  06511<br>Tel:   203-772-3100 (x 271)<br>Fax:   203-772-1691<br>email: bbloss@jacobslaw.com |

9