# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SONY ELECTRONICS INC., et al., | : | LEAD DOCKET No.: 3:00CV00754 (JBA) |
| | : | U.S.D.C./New Haven |
| Plaintiffs, | : | |
| | : | Member Case Nos.: |
| | : | 3.00CV00768 (JBA) |
| SOUNDVIEW TECHNOLOGIES, INC., | : | 3.00CV00981 (JBA) |
| | : | ALL CASES |
| Defendant. | : | |
| | : | NOVEMBER 15, 2002 |

## MEMORANDUM OF NON-SOUNDVIEW PARTIES IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT ON SOUNDVIEW'S ANTITRUST AND CUTPA CLAIMS

The Non-Soundview Parties[1] submit this memorandum, pursuant to Rule 56, FED. R. CIV. P., in support of their renewed motion for summary judgment on the antitrust and unfair trade practices counterclaims and third-party claims of Soundview Technologies, Inc. ("Soundview").[2]

### INTRODUCTION

In a perversion of both the American legal system in general and the antitrust laws in particular, Soundview insists that even though the Non-Soundview Parties did not infringe its patent, and Soundview therefore has suffered no patent injury, Soundview still can maintain this suit for an

---

[1] The Electronic Industries Alliance ("EIA"), Consumer Electronics Manufacturers Association ("CEMA"), Consumer Electronics Association ("CEA"), Mitsubishi Digital Electronics America, Inc., Toshiba America Consumer Products, Inc., Sharp Electronics Corporation ("SEC"), Sony Electronics Inc. ("Sony Electronics") and Sony Corporation of America (collectively referred to as the "Non-Soundview Parties").

[2] To the extent necessary to the Court's determination, the Non-Soundview Parties incorporate by reference the additional facts recited in their February 8, 2002 Local Rule 9(c)(1) Statement of Material Facts Not in Dispute.



alleged antitrust injury. Specifically, Soundview claims "injury" on the ground that it settled its patent infringement claims against *other* manufacturers for less than it had demanded. However, the antitrust laws only remedy "antitrust injury," which is injury inflicted on a party as part of harm to the competitive process itself. The "loss" voluntarily incurred by Soundview in fortuitously settling certain claims before an adverse judgment does not qualify as antitrust injury.

The first flaw in Soundview's theory, of course, is that Soundview never was entitled to any recovery for its baseless patent claims. Section 4 of the Clayton Act empowers any person "injured in his business or property" by reason of an antitrust violation to sue for treble damages. 15 U.S.C. § 15. An owner of a non-infringed patent sustains no cognizable antitrust injury to its business or property by virtue of the fact that it brings a baseless patent action and is able to coerce certain settlements through the litigation process.

Further, even if Soundview had valid patent infringement claims against other manufacturers, it *elected* to settle those claims. Any "injury" it might now claim from those settlements was the product of its own choice, not the product of any alleged injury to the competitive process, since it was always within Soundview's prerogative to have a court determine validity and infringement, and assess a full measure of recovery against any and all actual infringers.

In fact, given the finding of non-infringement and the conclusive rationale for that finding with respect to the implementation of V-chip technology in the United States, Soundview should be overjoyed if it gets to keep any of the payments it has extracted from other manufacturers.[3] The

---

[3] Soundview has provided no evidence that any television sold in the United States contains V-chip functionality having separate rating signal lines as required by the '584 patent. Thus, Soundview has failed to meet its burden of proof that any person (whether by settlement or

notion that the Non-Soundview Parties should pay the difference (three-fold) between what Soundview voluntarily accepted from other manufacturers in lieu of litigation and the royalties it theoretically would have collected *if* it actually could have proved that its patent had been valid and infringed (which it could not), turns the entire patent system on its head and makes a mockery of both antitrust and patent jurisprudence.[4]

## SOUNDVIEW HAS NOT SUFFERED ANY COGNIZABLE ANTITRUST INJURY

In its September 25, 2002 Ruling on the Non-Soundview Parties' Motion for Summary Judgment of Non-infringement [Doc. # 328], the Court held that the Non-Soundview Parties were entitled to summary judgment of non-infringement. Subsequently, in Soundview's Status Report for the conference held on October 16, 2002, Soundview took the extraordinary position that the Court's ruling "does not mean that Soundview has suffered no antitrust injury." (Soundview Status Report at 3). As the basis for this assertion, Soundview claimed that it had negotiated settlements with twelve companies at what it called "below-market rates" before the Court's judgment (*Id*). To complete the circular *ipsi dixit*, Soundview concluded that these licenses themselves demonstrated that a "market for licenses under the Soundview patent" exists and is subject to an antitrust injury "irrespective of the Court's September 2002 ruling." (*Id*).

Soundview's decision to settle does not transform its failed infringement claim into an antitrust claim. If it did, Soundview should have settled for even less than nuisance value, so that it could increase the "spread" between what it had demanded and what it actually pocketed, allowing it

---

otherwise) has actually infringed the '584 patent so as to entitle Soundview to any patent royalty.
[4] Some or all of the amounts Soundview has collected from settling companies appear to be non-refundable, at least in the absence of a finding that the patent was procured through inequitable

to collect *treble* these "lost" royalties as damages from the Non-Soundview Parties who succeeded in proving that they did *not* infringe. The law is simply not this perverse.

**"Market for Licenses."** In Soundview's estimation, the fact that the settling companies took licenses from Soundview at what it asserts are "below-market" rates, in the face of threatened or actual litigation, somehow proves that a relevant "market for licenses" capable of sustaining an antitrust injury must have existed; "[o]therwise, licenses could not have been negotiated with these parties." (*Id.* at 3).

However, the Supreme Court has instructed that to demonstrate "antitrust injury"—which is an essential element of an antitrust claim or CUTPA claim[5]—a plaintiff must demonstrate "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986); *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990). In other words, a plaintiff must be able to assert an injury to the competitive process in a legally cognizable market, as well as an injury to itself suffered as part of that injury to the competitive process.

The Court further explained in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 478 (1982):

---

conduct.

[5] As this Court has held, CUTPA claims such as those Soundview asserts, based on the same facts as a federal antitrust claim, also must "fail if no underlying antitrust violation is found." *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 7 F. Supp.2d 119, 122, 132 (D. Conn. 1998) (Arterton, J. & Garfindel, Mag. J.), *aff'd*, 186 F.3d 74, 81-82 (2d Cir. 1999). *See also Westport Taxi Serv. v. Westport Transit Dist.*, 664 A.2d 719, 728 (Conn. 1995) (Connecticut courts "follow" federal antitrust precedent when interpreting the Connecticut antitrust act). In any event, Soundview's lack of any cognizable injury (whether antitrust related or otherwise) bars any relief under its CUTPA claim.

-4-

> [W]e look (1) to the physical and economic nexus between the alleged violation and the harm to the plaintiff, and (2), more particularly, to the relationship of the injury alleged with those forms of injury about which Congress was likely to have been concerned [*i.e.*, marketplace injury to the public] in making defendant's conduct unlawful and in providing a private remedy under § 4 [of the Clayton Act, 15 U.S.C. § 15].

See also, *Associated General Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983).

Soundview has failed to meet this test. Under its theory, the antitrust laws exist to protect the right to sell an unneeded product for all it can fetch before it is revealed that the product is worthless. In reality, there is no "market" for a non-infringed patent because the patent has no value to the non-infringer. Moreover, if Soundview could find someone who actually *is* infringing its patent, the conspiracy alleged in this case would not diminish, and has not diminished, Soundview's ability to collect royalties from that infringer by one cent. It was always within Soundview's power to set the "market price" by requesting a reasonable royalty and litigating to judgment against any infringer that refused to pay it. In this case, it turns out that the market price was zero, and any settlements extracted by Soundview represent windfalls rather than damages.

In fact, under *Brunswick, Blue Shield* and *Associated General Contractors,* the only possible antitrust injury to the competitive process and to the public in this case came about through *Soundview's* assertion of a baseless patent monopoly and *Soundview's* exaction of royalties from the settling manufacturers, which will eventually be borne by consumers. See *Lear, Inc. v. Adkins,* 395 U.S. 653, 663-64 (1969); *United States v. Glaxo Corp Ltd.,* 410 U.S. 52, 57-58 (1973) ("'[i]t is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly . . .'") (quoting *Pope*

*Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892)); *Modrey v. American Gage & Mach. Co.*, 478 F.2d 470, 473 n.4 (2d Cir. 1973) (same); *see also Dillard Dep't Stores, Inc. v. Application Art Labs. Co.*, 787 F. Supp. 49, 52-53 (S.D.N.Y. 1992); *Lemelson v. Synergistics Research Corp.*, 669 F. Supp. 642, 645 (S.D.N.Y. 1987).

The injury Soundview claims is not injury to the competitive process and is only the result of Soundview's own decision to settle—which more accurately resulted in a bonanza to Soundview rather than a loss. A patent owner that *loses* on its infringement claim may not then pursue those defendants found *not* to have infringed its patent for the amounts it wished that settling defendants had paid, defining the magnitude of its "injury" by the magnitude of its own demand. This is not antitrust injury, and as the Supreme Court has explained, not what the antitrust laws were intended to achieve – i.e., to protect the competitive process with respect to genuine property interests in the marketplace.[6]

**"Market" for other patents owned by non-parties.** Soundview also contends that there is an injured "market" for licenses under "other V-chip patents," again "irrespective of the Court's September 2002 ruling," and that Soundview is the appropriate vindicator for those other patent

---

[6] It is also worth noting that by the time the settling companies took their licenses, Soundview already had commenced litigation charging conspiracy and boycott. It therefore could not have been duped into accepting a "below-market" rate through any alleged ignorance of "illegal collusion." Soundview, for its part, should have been willing to litigate with each alleged infringer to a judicial conclusion and let the Court set a reasonable royalty (plus interest), if it really believed that it had a valid patent that was being infringed, and that it was not being offered a reasonable royalty. Thus, the notion that the settling parties were able to pay a bargain rate "due to the illegal collusion" is nonsense. More than that, Soundview's willingness to accept the rates it negotiated after alleging a conspiracy and claiming treble damages could not possibly have been attributable to the alleged fact that, *prior to that time,* any of the settling parties had been participating in the alleged conspiracy. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (antitrust claims that "simply make no economic sense" warrant summary judgment).

owners. (*Id.*). This claim is equally nonsensical, because Soundview has taken the inconsistent position that its own patent "covers" the field defined by the FCC's V-chip standard, and that other patents are unnecessary in order to comply with that standard. (*See* Non-Soundview Parties' Local Rule 9(c)(1) Statement of Material Facts Not in Dispute ("Facts"), ¶¶ 29-31).

Furthermore, Soundview does not own any other V-chip patent beside the '584 patent. The Non-Soundview Parties addressed this same argument in their Reply Memorandum in support of their previous motions for summary judgment on Soundview's antitrust and CUTPA claims. There, it was pointed out that Soundview had made "the frivolous claim that it can establish antitrust injury even if its patent is declared invalid or not infringed because it has alleged injury to other owners of V-Chip related patents as well". Soundview ignores the most basic principle of antitrust injury, which is that an antitrust plaintiff must establish *both* injury to overall competition of the type the antitrust laws were intended to prevent . . . *and* injury to itself flowing from that injury to competition. If Soundview cannot prove the latter because it has no valid, infringed patent, it is immaterial whether it has alleged or can prove the former." (Reply Memorandum at 10). See *Brunswick, supra* and *Blue Shield, supra*.[7]

---

[7] It should also be noted that while one of Soundview's proffered experts opined in this case that there was some abstract injury to the V-chip patent market generally, irrespective of infringement of Soundview patent (see Schumann Affidavit ¶ 13), the only quantification of any alleged damages to Soundview under the patent or antitrust laws was proffered by its other expert Mr. Gemini. Mr. Gemini offered no theory of damages other than on the fundamental assumption of infringement. *See* Gemini Report at ¶ 14. Thus, prior to the summary judgment decision, even Soundview recognized it had no claim for any kind of damages absent infringement.

## SOUNDVIEW FAILED TO DEMONSTRATE ANTITRUST INJURY REGARDLESS OF WHETHER THE NON-SOUNDVIEW PARTIES HAD INFRINGED SOUNDVIEW'S PATENT.

Even if Soundview had proved that the Non-Soundview Parties infringed its patent (which of course it did not), it never established antitrust injury necessary to sustain its antitrust and CUTPA claims. Conduct of the type evidenced in discovery in this case—responding to infringement claims by taking steps to petition a federal agency and challenge a patent in litigation—could not have caused antitrust injury and could not have sustained an antitrust claim even if the Non-Soundview Parties actually *had* infringed Soundview's patent. Such conduct is procompetitive and not subject to redress under the antitrust laws.

If Soundview had suffered any injury at all (assuming that it could have proved that its patent was valid and infringed), it would have been injury addressed by the patent laws, not the antitrust laws. *See IMS Tech., Inc. v. Mitsubishi Elec. Corp.*, No. 96-206-A (E.D. Va. Apr. 5, 1996). In *IMS*, the court dismissed a substantively identical claim to that presented by Soundview. The plaintiff similarly alleged that the defendants had "met, conferred, conspired, combined and agreed among themselves and, on information and belief, with other potential licensees of the . . . patent, that they would infringe [the] patent without the [plaintiff's] patented technology." (*IMS* Complaint ¶ 18 (attached as Ex. A to the Non-Soundview Parties' original summary judgment memorandum); *compare* Soundview's almost identical Amended Counterclaims ¶ 48). In *IMS*, the court recognized that the plaintiff's allegation was a patent claim masquerading as an antitrust claim and granted defendants' motion to dismiss. *Accord Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 214 F. 2d 891, 894 (5th Cir. 1954), *cert. denied*, 348 U.S. 912 (1955) (infringement does not constitute cognizable harm under the antitrust laws).

Similarly, Soundview never constructed a valid antitrust claim by suing potential licensees for disputing the validity of its patent. To the contrary, public policy favors patent challenges in order to make markets *more* competitive, rendering such conduct *pro*competitive, not anticompetitive. As described in the briefs supporting the Non-Soundview Parties' original summary judgment motion on Soundview's antitrust and CUTPA claims (which briefs are incorporated herein), harm suffered as a result of conduct that is procompetitive or competitively neutral will not suffice to establish antitrust injury. *See Balaklaw v. Lovell*, 14 F.3d 793, 797-800 (2d Cir. 1994); *Granite Partners, L.P. v. Bear Stearns & Co.*, 58 F. Supp. 2d 228, 246 (S.D.N.Y. 1999); *Sage Realty Corp. v. ISS Cleaning Serv. Group, Inc.*, 936 F. Supp. 130, 136 (S.D.N.Y. 1996).

Thus, Soundview cannot establish antitrust injury by showing that the Non-Soundview Parties petitioned the government and challenged Soundview's patent. Nor, as described above, can Soundview pursue the Non-Soundview Parties—found *not* to have infringed Soundview's patent—for the royalties it wished that settling companies had paid. The payment of a patent royalty is predicated by 35 U.S.C. § 284 upon the actual use and infringement of the patent in suit. Neither the patent laws nor the antitrust laws were intended by Congress to be used to extort royalties from non-infringing parties. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964).

### SOUNDVIEW HAS FAILED TO ADDUCE ADEQUATE PROOF OF CONSPIRACY, AND THE CONDUCT ALLEGED IS CONSTITUTIONALLY PROTECTED.

Even if the Court had not ruled that the Non-Soundview Parties do not infringe Soundview's patent, and even if Soundview *had* adduced adequate evidence of antitrust injury, summary judgment still would have to be granted to the Non-Soundview Parties on Soundview's antitrust and CUTPA claims because Soundview has failed to adduce adequate proof of conspiracy, and furthermore,

because the activity in which the Non-Soundview Parties engaged is immune from antitrust liability under the *Noerr-Pennington* doctrine. The record and the law on these points are briefed in the original Memorandum of the Non-Soundview Parties in Support of Motions for Summary Judgment on Soundview's Antitrust and CUTPA Claims, and the original Reply Memorandum, which are incorporated by reference and will not be repeated here, but those arguments remain dispositive and provide additional, independent grounds for granting summary judgment against Soundview's antitrust and CUTPA claims.

## CONCLUSION

The patent laws provide a complete remedy for infringement where infringement exists, and foreclose the possibility of a successful agreement among infringers to escape the consequences of real infringement. At the end of the day, it is the patentee, not the accused infringers, who determines how, when, and where the patent will be enforced; and—unless the patentee chooses to settle its claims—the Court and jury decide what royalties, if any, are warranted. In short, there never was the power here to create or maintain an unlawful monopsony (or oligopsony) with respect to Soundview's patent, by agreement or otherwise, that would cause antitrust injury, and the record now confirms this.

Soundview bought the '584 patent so that it could threaten infringement litigation and "see if we could negotiate agreements," because "ultimately" Soundview expected the television manufacturers to "sit down and negotiate." (Facts ¶ 19, 22). The fact that Soundview was put to its proof in this Court and failed to prove infringement has not muted its bravado. However, the Court's non-infringement ruling has extinguished every one of Soundview's causes of action, including the

ill-conceived antitrust and CUTPA claims. Soundview has played all of its cards, and its remaining claims should be dispatched once and for all.

Wherefore, for the reasons stated herein, it is respectfully submitted that the Court should grant the motion of the Non-Soundview Parties for summary judgment on Soundview's antitrust and CUTPA counterclaims and third-party claims.

NOVEMBER 15, 2002

Respectfully submitted,

Of Counsel:
Richard L. DeLucia
Richard S. Gresalfi
Elizabeth A. Gardner
Alexas D. Skucas
Kenyon & Kenyon
One Broadway
New York, NY 10004
Tel. 212-425-7200
Fax 212-425-5288

NON-SOUNDVIEW PARTIES

By: _____
Jacqueline D. Bucar (CT01187)
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, CT 06509
Tel. 203-784-8200
Fax 203-789-2133
E-mail Bucar@tylercooper.com

**Attorneys for Sony Electronics Inc. and Sony Corporation of America**

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of November, 2002 a copy of the foregoing was mailed:

**Via Federal Express to Counsel for Soundview Technologies, Inc.**
Raymond P. Niro, Esquire
John C. Janka, Esquire
Robert P. Greenspoon, Esquire
Niro, Scavone, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, IL 60602

**and First Class Mail, Postage Prepaid to:**

**Counsel for Soundview Technologies, Inc.**

| | |
|---|---|
| John J. Bogdanski, Esquire | Eugene M. Cummings, Esquire |
| David S. Monastersky, Esquire | David M. Mundt, Esquire |
| Howd & Ludorf | Cook, Alex, McFarron, et al |
| 65 Wethersfield Avenue | 200 West Adams |
| Hartford, CT 06114 | Chicago, IL 60603 |

**Counsel for Consumer Electronics Association & Electronic Industries Alliance**
Peter J. Kadzik, Esq.
R. Bruce Holcomb, Esq.
Gary M. Hoffman, Esq.
Kenneth W. Brothers, Esq.
Jorge Kotelanski, Esq.
Dickstein Shapiro Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037

**Counsel for Mitsubishi Digital Electronics America**

| | | |
|---|---|---|
| Vincent J. Belusko, Esq. | Joseph L. Clasen, Esq. | Bradley S. Lui, Esquire |
| Eric Shih, Esq. | David J. Burke, Esq. | Morrison & Forerster, LLP |
| Robert S. McArthur, Esq. | Robinson & Cole LLP | 2000 Pennsylvania Ave., N.W. |
| Morrison & Foerster, LLP | 695 East Main Street | Suite 5500 |
| 425 Market Street | Stamford, CT 06904-2305 | Washington, DC 20006-1888 |
| Los Angeles, CA 94105 | | |

**Counsel for SONY Corporation of America and SONY Electronics Inc.**

| | | |
|---|---|---|
| Elizabeth A. Gardner, Esq. | Richard M. Steuer, Esq. | Mark S. Popofsky, Esq. |
| Thomas R. Makin, Esq | Kaye, Scholer, Fierman, | Kaye, Scholer, Fierman, |
| Kenyon & Kenyon | Hays & Handler | Hays & Handler |
| One Broadway | 425 Park Avenue | The McPherson Building |
| New York, NY 10004 | New York, NY 10022-3598 | 901 Fifteenth St., N.W. |
| | | Suite 1100 |
| | | Washington, DC 20005-2327 |

Jaime A. Siegel, Esquire
Sony Corporation of America
One Sony Drive
Park Ridge, New Jersey 07656

**Counsel for Sharp Electronics Corporation**

| | |
|---|---|
| Robert W. Adams, Esq. | William M. Bloss, Esq. |
| Mickey Gill, Esq. | Jacobs, Grudberg, Belt & Dow, P.C. |
| Nixon & Vanderhye, P.C. | 350 Orange St., P.O. Box 606 |
| 1100 North Glebe Road | New Haven, CT 06503-0606 |
| Arlington, VA 22201-4714 | |

**Counsel for Toshiba America Consumer Products, Inc.**

| | | |
|---|---|---|
| Larry S. Nixon, Esq. | Thomas Gallatin, Esq. | William Bloss, Esq. |
| Michael Shea, Esq. | Latham & Watkins | Jacobs, Grudberg, |
| Jeff Nelson, Esq. | 885 Third Ave., Suite 1000 | Belt & Dow, P.C. |
| Nixon & Vanderhye, P.C. | New York, N.Y. 10022-4802 | 350 Orange St. |
| 1100 North Glebe Road | | P.O. Box 606 |
| Arlington, VA 22201-4714 | | New Haven, CT 06503 |

_/s/ Jacqueline D. Bucar_
Jacqueline D. Bucar (CT 01187)