# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SONY ELECTRONICS INC., et al | ) | LEAD DOCKET NO.: 3:00CV 007 |
| | ) | U.S.D.C./New Haven |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Member Case Nos.: |
| v. | ) | 3:00CV00768 (JBA) |
| | ) | 3:00CV00981 (JBA |
| SOUNDVIEW TECHNOLOGIES, | ) | ALL CASES |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | DECEMBER 13, 2002 |

**REPLY MEMORANDUM OF NON-SOUNDVIEW PARTIES
IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT
ON SOUNDVIEW'S ANTITRUST AND CUTPA CLAIMS**

EXHIBIT B

## TABLE OF CONTENTS

**Page**

1. Summary Judgment Is Altogether Appropriate In Antitrust Cases ................................... 2
2. Soundview Cannot Demonstrate Antitrust Injury ............................................................. 3
3. Soundview's Argument That It is Entitled To Recover For The Period Piror To The Determination Of Non-Infringement Makes No Sense ............................................ 5
4. Soundview Has No Standing to Claim Injury Based on Other Peoples' Patent ........ 6
5. Soundview Has No Response To The Non-Soundview Parties Further Argument .......... 8
   Conclusion ..................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**Cases**
*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986) .................................................................. 2
*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ............................................. 4
*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ............................................ 4
*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986) ........................................................ 4
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................. 2
*Dillard Dept. Stores, Inc. v. Application Art Labs. Co.*, 787 F. Supp. 49 (S.D.N.Y. 1992) .......... 4
*Lear Inc. v. Adkins* 395 U.S. 653 (1969) ...................................................................................... 4
*Lemmelson v. Synergistics Research Corp.*, 669 F. Supp. 642 (S.D.N.Y 1987) ........................... 4
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574 (1986) .................................. 2, 6
*Modrey v. American Gage & Mach. Co.*, 478 F.2d 470 n-4 (2d. Cir. 1973) ................................ 4
*Tops Mkt., Inc. v. Quality Mkt., Inc.* 142 F.3d 90 (2d Cir. 1998) .................................................. 2
*United States v. Glaxo Group Ltd.*, 410 U.S. 52 (1973) ............................................................ 3, 9

**Statutes**
15 U.S.C. § 375 ............................................................................................................................. 1

Soundview's antitrust theory must fail because there can be no antitrust injury to Soundview in the absence of infringement of the Elam patent. In other words, to be entitled to a royalty payment based upon an alleged "market" for a license under the Elam patent, Soundview must prove that one or more conspirators actually infringed that patent by employing separate rating signal lines in V-chip microprocessors. To hold otherwise is to determine that a patent owner is entitled to royalty payment regardless of whether or not it has a valid infringement claim.

This lack of infringement demonstrates that there can be no antitrust "injury" to Soundview because Soundview is not entitled to any patent royalties whatsoever. For this Court to reward Soundview under the guise of the antitrust laws with a patent royalty recovery stemming from an alleged refusal to take a patent license would be totally contrary to logic and the law. *See Lear, Inc. v. Adkins*, 395 U.S. 653, 663-64 (1969); *United States v. Glaxo Corp. Ltd.*, 410 U.S. 52, 57-8 (1973) ("competition should not be repressed by worthless patents," quoting *Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892)). In short, Soundview's antitrust claim for diminished royalty payments must fail because it suffered no cognizable "injury" in view of the lack of any infringement of the Elam patent.

Soundview fails to confront the fact that the litigation windfalls it received prior to the dismissal of its claims do not create antitrust injury. Its bare assertion that some forty-two other patentees have suffered at the hands of what it now labels as the "R4.3 cartel" not only lacks any factual basis, but, as a matter of law, cannot substitute for its required showing that Soundview itself has suffered an antitrust injury under Section 4 of the Clayton Act. Section 4 requires that a plaintiff must prove that it has suffered an injury to its "business or property." 15 U.S.C. 375.[1]

---

[1] *See* cases collected at page 21 of the Non-Soundview Parties' February 8, 2002 memorandum. (Exhibit A).

Soundview's response is to speculate about these forty-two patents held by other parties and to pretend that the Court already has made factual findings sufficient to save its antitrust claims in the face of a holding, as a matter of law, that it suffered no injury to its non-infringed patent — the only property interest here at issue. As a matter of law, Soundview has not suffered any antitrust injury to any cognizable property interest and summary judgment is required.[2]

1. **Summary Judgment Is Altogether Appropriate In Antitrust Cases.** Soundview counsels the Court that summary judgment is allegedly disfavored in antitrust cases and "must be approached with caution" (Soundview Mem. at 4), citing some older cases. These cases have been eclipsed, however, by the Supreme Court's decisions in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and a multitude of other cases making clear that summary judgment is as appropriate in antitrust cases as in any other type of case. As the Supreme Court instructed in *Celotex,* "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." 477 U.S. at 317. *See also Tops Mkt., Inc. v. Quality Mkt., Inc.,* 142 F.3d 90, 95 (2d Cir. 1998) ("Courts use summary judgment 'to isolate and dispose of factually unsupported claims', [citing *Celotex*], particularly in the antitrust context. By avoiding wasteful trials and preventing lengthy litigation that may have a chilling effect on pro-competitive market forces, summary judgment serves a vital function in the area of antitrust law"); *cf. United States v. Glaxo Group Ltd.,* 410 U.S. 52,

---

[2] Ironically, included in the list of forty-two other patents which is now touted by Soundview, are patents owned by certain of the Non-Soundview Parties themselves, such as Sony (U.S. Pat. 5,418,853) and Toshiba (U.S. Pat. 4,829,589), as well as companies that were originally parties to this suit or alleged to infringe the patent, such as Thomson (U.S. Pat. 4,718,107), Pioneer (U.S. Pats. 5,228,082 and 5,091,937) and Zenith (U.S. Pats. 4,554,579 and 4,600,921). The alleged conspiracy, therefore, would include as victims the conspirators themselves. Clearly, Soundview cannot be an appropriate plaintiff with standing under the antitrust laws to vindicate the purported rights of others even if one were to accept its other arguments.

58 (1973) ("competition should not be repressed by worthless patents"). The courts have made it abundantly clear that parties no longer may escape summary judgment simply because they have brought antitrust claims.

In a further effort to avoid summary judgment for lack of antitrust injury, Soundview once again mischaracterizes this Court's decision on the prior 12(b)(6) motion as a factual *finding* that forty-two other patents were infringed and forty-three patent owners, including Soundview, were therefore somehow injured as a result. Even if the status of these forty-two other patents, which are not before this Court, had any bearing on whether Soundview had sustained an injury to its patent, Soundview overlooks the fact that in deciding the 12(b)(6) motion, the Court was required to accept the allegations pleaded as true. Soundview, for its part, has proffered no evidence of any infringement of *any* patents. This is *summary judgment*, and Soundview no longer can rely on its pleadings. Soundview's argument that "[t]he cartel offers *no evidence* that could alter this Court's conclusion that Soundview adequately pleaded" price fixing and boycott (Soundview's Mem. at 3; emphasis added) turns Soundview's burden on its head.

2.   **Soundview Cannot Demonstrate Antitrust Injury.**   Soundview tries hard to duck the fact that it has sustained no antitrust injury, advancing the false argument that even if it had not entered into settlements with any manufacturer (which it now contends were inadequate), it still would have been damaged in an amount measured by the difference between a "market rate" for a license to its patent (presumably determined in litigation) and zero. As Soundview puts it:

> Even under the R4.3 cartel's hypothetical case, in which there are no agreements and the litigation proceeds against all, the same antitrust injury simply results in greater antitrust damages. Damages would be the difference between the market rate (perhaps

     measured by the "full recovery") and the amount (zero) actually received.

(Soundview Mem. at 6-7). The gaping flaw in this argument under the facts of this case, of course, is that the market rate measured by the "full recovery" in litigation itself turns out to be zero, and the difference between zero and zero is still zero.

  Soundview cites *Andrx Pharm., Inc. v. Biovail Corp.*, 256 F.3d 799 (D.C. Cir. 2001), but that case is entirely distinguishable. In *Andrx*, the conspiracy was allegedly to delay the plaintiff's entry into the market for a generic drug through an agreement not to market defendant's product, where such marketing would have triggered a statutory provision permitting plaintiff to market its own product. Plaintiff had no means of recovery for its damages other than under antitrust laws. Furthermore, the court there made clear that there must be both a showing of injury to competition of the type the antitrust laws were designed to prevent and a showing that plaintiff was prevented from selling its product in the market. 256 F.3d at 806. Here, Soundview always had a full remedy under the patent laws (if indeed it had a legitimate claim) and peddling settlements for a non-infringed patent is not an area of commerce the antitrust laws were intended to protect. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986); *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990). Indeed, the law is to the contrary. *See Lear Inc. v. Adkins* 395 U.S. 653 (1969); *Modrey v. American Gage & Mach. Co.*, 478 F.2d 470 n.4 (2d. Cir. 1973); *Dillard Dept. Stores, Inc. v. Application Art Labs. Co.*, 787 F. Supp. 49; 52-53 (S.D.N.Y. 1992); *Lemmelson v. Synergistics Research Corp.*, 669 F. Supp. 642, 645 (S.D.N.Y 1987).

  Soundview argues that no "victim" would ever have antitrust standing to recover damages based on imputed patent royalties from settling defendants if Soundview cannot recover here (Soundview Mem. at 6), but this simply amounts to recognition of the fact that in a patent

infringement case, the court is in a position to make the patent owner whole by awarding reasonable royalties and interest. Soundview can point to no other case in which a patent owner that has not proved infringement by anyone has even attempted to recover, from parties adjudicated *not* to have infringed, a bounty on top of settlement amounts obtained from others — in the guise of "antitrust damages" — let alone succeeded. Soundview is correct that if it cannot recover the damages it seeks, no other litigant in the same posture would be able to do so, but that is an eminently common sense result.

3. **Soundview's Argument That It Is Entitled To Recover For The Period Prior To The Determination Of Non-Infringement Makes No Sense.** Soundview argues that "much of the injury occurred *before* th[e] summary finding" of non-infringement (Soundview Mem. at 8), as though the Non-Soundview Parties could commit an antitrust violation until such time as the Court held that they were not infringers.

According to Soundview:

> even if it is eventually found on appeal that its patent is not infringed, Soundview is entitled to recompense under the antitrust laws for the injuries already suffered in the form of reduced royalty rates negotiated by defecting members of the R4.3 cartel before Sony obtained its summary noninfringement determination.

(Soundview Mem. at 9). Throughout its response, Soundview implies that there was something improper about granting summary judgment on the non-infringement issue, and that "Sony" (not the Non-Soundview Parties or "the R4.3 cartel") improperly procured this Court's "summary finding" instead of buckling under to Soundview's baseless claim of infringement. Soundview now claims that it "had to take what it could get" and it had to offer a "reduced royalty" to induce settlement from the settling defendants, but this does not render the purported "damages" it claims for the period prior to the Court's ruling on noninfringement any different in nature from the purported damages it claims for the period after that ruling. The ruling was that there

- 5 -

*never was* infringement, and therefore the Non-Soundview Parties were in exactly the same posture both before and after the ruling.[3]

Soundview's argument now, that it is somehow entitled to damages for the period prior to the summary judgment decision, simply makes no sense, and as the Supreme Court has instructed, claims that are "implausible" and arguments that "simply make no economic sense" are to be disregarded. *Matsushita,* 475 U.S. at 587. Either before the summary judgment ruling or after, Soundview and the settling defendants had a choice, based on the facts known at the time, including the extraordinary costs of this type of litigation, as to whether to settle. The amounts at which those settlements were reached were obviously configured based on a host of considerations, including Soundview's assessment of the strength of its claims and the defendant's assessment of the nuisance value of this litigation. The fact of this calculus does not transform these settlements prior to summary judgment into antitrust damages.

4.  **Soundview Has No Standing To Claim Injury Based On Other Peoples' Patents.** There is no factual basis that Soundview can point to that others have infringed its patent. Soundview, however, to support this position, argues on page 5 of its brief that 75 percent of the market believed the patent to be valid and infringed. Soundview relies on the settlement agreements and certain documents.

    a.  **Settlement Agreements.** As to the settlement agreements, they were only nuisance settlements (Soundview admits they were below market amounts) and, many of the agreements specify that there was no concession of liability. For example, the Hitachi agreement (HIT15; Exhibit C) provides "Nothing herein shall be construed as an admission or opinion by

---

[3] Soundview failed to proffer (and could not proffer) any evidence that *any* accused conspirator utilized the separate rating signal lines that are required to infringe the Elam patent. Thus on the record for this motion, the Court must conclude that none of them infringed this patent.

- 6 -

either party with respect to the merits of the claims in the Lawsuits or to the reasonableness of any particular royalty or royalty rate for the '584 patent."

The JVC agreement (SVW14634; Exhibit D) provides: "Nothing contained herein shall be construed as an admission by JVC ... that there has been direct or contributory infringement or inducement to infringe the '584 patent or that the '584 patent is valid or enforceable."

The Matsushita agreement provides essentially the same thing (SVW15917; Exhibit E).

The Pioneer agreement (SVW15880; Exhibit F) provides that the settlement is not to "be construed as an admission of liability by any party, and that all liability is expressly denied by all parties."

As to the "nuisance" value of the settlements, according to the AIPLA Report of Economic Survey for 2001 (Exhibit G), in the New York City metropolitan area (with more that 25 million at risk), the average litigation cost in a patent infringement suit is about $3 million. According to Schedule 5 to the report of Soundview's damages expert, Joseph Gemini (Exhibit H), however, many companies settled for under this amount. For example, Hitachi paid $750K, Pioneer paid $300K, Samsung paid $750K, Daewoo paid $400K, Zenith paid $990K, Sanyo paid $2.6 million, and Orion and Philips paid at most $3 million.

This evidence does not support a finding that anyone infringed Soundview's patent.

    b.    **Documents**. As to the documents, the Non-Soundview Parties previously demonstrated in the "Non-Soundview Parties Opposition to Soundview's Notice of Newly Discovered Evidence," filed December 10, 2001, that with respect to the document [Exh. R] cited on page 8 of Soundview's opposition, the author, from Hitachi, testified that he never compared the accused televisions with any claim of the patent in suit, that he was not a patent lawyer or a lawyer at all, and that he did not know what was required to legally constitute

infringement. With respect to the document purportedly "echoing CEMA beliefs," the document does not refer to Soundview's patent, any claim analysis or any feature of any accused product.

As for the "Philips" document that Soundview mentions on page 8, although Soundview tries to imply that Philips wrote the document, the record does not support this. Soundview admitted that it does not know where the document came from in its Brief in Opposition to Sony Parties' Motion for Summary Judgment of Non-Infringement. Again, whoever wrote this document made no apparent comparison between the claims and any accused product. Accordingly, this evidence does not support a finding that anyone infringed Soundview's patent.

5. **Soundview Has No Response To The Non-Soundview Parties' Further Arguments.** Soundview has no meaningful response to the additional arguments raised by the Non-Soundview Parties in support of their motion for summary judgment on Soundview's antitrust claims:

(1) Soundview has failed to adduce evidence of antitrust injury regardless of the Court's ruling on infringement. As previously explained, injury suffered as a consequence of a challenge to patent validity and infringement claims would not constitute antitrust injury, even if it ultimately were determined that the patent was both valid and infringed. (*See* original Mem. of Non-Soundview Parties (Exhibit A) at 28-30; original Reply Mem. of Non-Soundview Parties (Exhibit B at 9-10).

(2) Soundview has failed to adduce evidence of either price fixing or boycott. As previously demonstrated, upon close examination of the record there has been a complete failure of proof on Soundview's claim of conspiracy. (*See* original Mem. at 2-20, 22-25; original Reply Mem. at 2-8). Consequently, it is no longer sufficient at this stage for Soundview to quote a law review article for the non-controversial point that buyer conspiracies and seller conspiracies both

can be illegal. (Soundview Mem. at 10-11). The more pertinent principle is that, as a matter of public policy, "competition should not be repressed by worthless patents." *United States v. Glaxo Group Ltd.*, 410 U.S. 52, 57-58 (1973).[4]

(3) Soundview has failed to refute the showing that the conduct it has alleged is immune from antitrust liability under the *Noerr-Pennington* doctrine. The record is crystal clear that the FCC itself was seeking information about royalty demands here, and that the requests made to the FCC to grant greater flexibility were constitutionally protected. (See original Mem. (Ex. A) at 3-4, 8, 25-28; original Reply Mem. (Ex. B) at 4-5, 8-9).

These arguments are fully briefed in the original Memorandum and Reply Memorandum of the Non-Soundview Parties (attached hereto), and would be dispositive of Soundview's antitrust claims regardless of how the Court had ruled on infringement.

## Conclusion

It is time to put an end to Soundview's never-ending quest to find a market for the Elam patent. This Court has already held that the Non-Soundview Parties do not infringe the Elam Patent. In addition, Soundview has not presented any admissible evidence to support a finding that any of the supposed "conspirators" in fact infringed the patent. Specifically, Soundview points to no evidence in the record that any of the alleged conspirators utilized the separate rating signal line structure required by the patent. Thus, there is no evidence before this Court that

---

[4] Soundview further asserts that the Non-Soundview Parties (newly dubbed "the R4.3 cartel") do not deny either Soundview's allegations as to what transpired at Association meetings, the nature of responses to Soundview's demands for royalties, discussions of strategies to avoid unreasonable royalty demands, or the description of one particular Association meeting provided by a consultant (Mr. Lechner) who secretly worked for Soundview while also working for the Association. (Soundview Mem. at 6). In reality, all of these factual fabrications are denied, and dispatched, in the original memorandum of the non-Soundview parties. (See original Mem. (Ex. A) at 2-20, 22-25; original Reply Mem. (Ex. B) at 2-8). It was Soundview's burden to proffer facts supporting its theory, but as previously demonstrated, the record makes clear that there were no secret meetings, there was no uniform failure to respond to Soundview's demands and threats (the responses of the Non-Soundview Parties are attached hereto as Exhibit I, J K, L & M), there were no discussions about "avoiding" unreasonable royalties other than through legitimate petitioning of the FCC, and Mr. Lechner's comment, as explained by Mr. Lechner himself, was not as Soundview pleaded and did not support Soundview's claim. Thus, there is a complete failure of proof on Soundview's part on the issue of an antitrust conspiracy.

would support any claim that Soundview suffered any antitrust injury — even if there had been a conspiracy. The alleged conspirators could not have injured any "market" for the Elam Patent because they were never in the market for such a license.

For all of the reasons stated herein and in the previously filed briefs, it is respectfully submitted that the Court should grant the motion of the Non-Soundview Parties for summary judgment on Soundview's antitrust and CUTPA counter-claims and third-party claims, and bring this litigation to an end.

Respectfully submitted,

NON-SOUNDVIEW PARTIES

Of Counsel:
Richard L. DeLucia
Richard S. Gresalfi
Elizabeth A. Gardner
Alex D. Skecus
Kenyon & Kenyon
One Broadway
New York, NY 10004
Tel. 212-425-7200
Fax 212-425-5288

By: _____
Jacqueline D. Bucar (CT 01187)
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, CT 06509
Tel. 203-784-8200
Fax 203-865-7865
E-mail: Bucar@tylercooper.com

Attorneys for Sony Electronics Inc.
And Sony Corporation of America