# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SONY ELECTRONICS, INC. et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | LEAD DOCKET NO. |
| ) | 3:OO-CV-00754 (JBA) |
| ) | U.S.D.C./New Haven |
| SOUNDVIEW TECHNOLOGIES, INC., et al. ) | |
| ) | ALL CASES |
| Defendant. ) | |
| ) | |

EXHIBIT C

### SEC'S SUPPLEMENTAL REPLY TO SOUNDVIEW'S OPPOSITION BRIEF

Sharp Electronics Corporation (SEC) is filing this separate, supplemental brief in response to certain group conspiracy arguments directed at SEC in Soundview's brief opposing the antitrust summary judgment motion filed by the non-Soundview parties. SEC has joined in and fully adopts the arguments made in the non-Soundview parties' main reply brief that is being filed today.

SEC is filing this paper because Soundview's opposition brief asserts at page 3 (and elsewhere) that the non-Soundview parties presented no evidence to rebut the claim that the non-Soundview parties engaged in a group boycott and concerted refusal to deal to take a license or to try to lower the license payment.[1] As shown hereinafter, this statement is entirely false with respect to SEC and its parent company, Sharp Corporation (hereafter Sharp Japan).

More specifically, the unrebutted evidence in this case establishes that (1) only the

---

[1] SEC notes that Soundview's argument is not relevant to the issue that the Court instructed the parties brief – *i.e.*, whether the grant of the non-Soundview parties' non-infringement summary judgment motion also supports the grant of a motion to dismiss the Soundview antitrust and CUPTA claims. Nevertheless, SEC wants the record to be clear that it does not agree with the statements on page 3 of Soundview's opposition brief and, therefore, it wants to record to contain citations rebutting Soundview's group conspiracy contentions vis-à-vis SEC.

569139

Intellectual Property Department (hereafter the patent department) of Sharp Japan has the right to make licensing decisions with respect to the offer of U.S. patent licenses, (2) only Sharp Japan received an offer of a license from Soundview, (3) the patent department of Sharp Japan made a unilateral decision to refuse Soundview's license offer, (4) Sharp Japan's patent department made the decision to refuse the Soundview license because it independently determined that there was no infringement and (5) the patent department of Sharp Japan was not informed of the accused activities at EIA/CEMA meetings. These five unrebutted facts mandate the grant of summary judgment in favor of SEC with respect to the Soundiew antitrust and CUPTA claims against SEC.

### (1) Only the patent department of Sharp Japan has the right to make licensing decisions with respect to U.S. patent licenses

SEC simply is not authorized to decide whether to accept a patent license from an outside company or what, if any, royalties are appropriate. (Tanner Tr. 7, 43-45, attached as Ex. 46 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts) Instead, only the patent department of Sharp Japan has the authority to make decisions with respect to whether Sharp Japan and SEC will accept a license under a U.S. patent. (Kimura Tr. 7, 9-11, 24-25, attached as Ex. 47 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts)

Thus, the evidence of record demonstrates that only the patent department of Sharp Japan has the right to make U.S. patent licensing decisions. Soundview has presented no evidence that SEC (the wholly owned subsidiary of Sharp Japan) has any authority to make or did make any licensing decisions with respect to the Elam patent.

### (2) Only Sharp Japan received an offer of a license from Soundview

Sharp Japan was the actual recipient of Soundview's letter in April 1998 offering a license. (Kimura Tr. 7, 9-11, 24-25, attached as Ex. 47 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts) Significantly, SEC itself never received any offer of a license from

2

Soundview nor did it ever negotiate with Soundview concerning a license under the Elam patent. (Mossman Tr. 26-27, 30, 32-33, attached as Ex. 49 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts)

Hence, the record is clear that only Sharp Japan was offered a license by Soundview and that no license offer was made to SEC.

### (3) The Sharp Japan patent department unilaterally refused Soundview's license offer

The decision to reject Soundview's proposal of a license was made solely by the patent department of Sharp Japan. (Kimura Tr. 7, 9-11, 24-25, attached as Ex. 47 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts). In particular, Sharp Japan's Intellectual Property Department Manager, Mr. Tetsuji Kimura testified as a 30(b)(6) representative as follows:

Q: Who else was involved in the decision not to accept Soundview's licensing offer besides yourself?

A: In addition toe [sic] myself, it would have been my boss, Mr. Kuratani. Then my boss changed and became Mr. Murakami. So all told, it would have been myself, Mr. Kuratani and Mr. Murakami.

(*Id.* at 24-25)

Significantly, Soundview has offered no evidence that any other persons were involved in the unilateral decision by Sharp Japan to refuse a license under the Elam patent. For example, Soundview has provided no proof that SEC or anyone else (such as anyone with Sony, Toshiba or Mitsubishi) was involved in that decision by the patent department of Sharp Japan.

### (4) Sharp Japan's patent department refused a license because there is no infringement

The unilateral decision by Sharp Japan's patent department to refuse a license under the Elam patent was based entirely upon Mr. Kimura's conclusion that no license from Soundview was necessary because there could be no infringement. (Kimura Tr. 9-11, 15-19 and 24-25,

3

attached as Ex. 48 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts) In fact, Mr. Kimura testified that he concluded that there was no infringement because Sharp receivers do not contain, *inter alia*, a microprocessor having separate rating signal lines. (Kimura Tr. 25, attached as Ex. 48 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts) Obviously, Mr. Kimura's opinion was correct because this Court concluded that there was no infringement for the very same reason. See this Court's Ruling dated September 26, 2002.

Although Soundview has complained that it took Sharp Japan about 18 months to respond to Soundview's April 1998 offer of a license, the sale of Sharp televisions incorporating a V-chip microprocessor did not begin until a few months before the date when Sharp Japan responded in November 1999. Kimura Tr. 43, attached as Exhibit A hereto. In other words, Sharp responded shortly after the first Sharp product containing V-chip functionality appeared in the United States in about June/July 1999.

### (5) Sharp Japan's patent department was not told of the accused activities at EIA/CEMA meetings

The record is unrebutted that Mr. Kimura and his patent department were not informed of the activities at CEMA meetings. (Kimura Tr. 20, 37-38, 41, attached as Ex. 50 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts) Hence, nothing that was said or done at those meetings had any impact upon the patent department's unilateral decision to refuse a license under the Elam patent.

### (6) Soundview's bald allegations cannot create a conspiracy

As is apparent from the foregoing, Soundview's continued allegations of a cartel or a conspiracy cannot create a cause of action with respect to SEC (or Sharp Japan) in the absence of specific proof that SEC participated in such a cartel or conspiracy. Although Soundview's opposition repeatedly lumps SEC into the alleged cartel, it is noteworthy that the only citation with respect to SEC/Sharp Japan is a reference (at page 8 of Soundview's opposition brief) to

4

Hoshino deposition pages 53-54. In doing so, Soundview's opposition brief <u>implies</u> that Mr. Hoshino, a Sharp employee, agreed that the Soundview patent was "impossible to avoid."

However, a review of those actual deposition pages (attached hereto at Exhibit B) shows that Mr. Hoshino had never seen the document and that no foundation was established for asking any questions as to that document because there was no indication who wrote or received the document. See Exhibit B hereto, page 53, line 9 to page 54, line 16. Instead, all Mr. Hoshino did was to provide a translation for certain words from an inadmissible document. So much for Soundview's proof that SEC/Sharp Japan engaged in a cartel to refuse a patent license.

Accordingly, SEC respectfully submits that the non-Soundview parties' motion for summary judgment should be granted in all respects with regard to Soundview's antitrust and CUPTA claims.

Respectfully submitted,

SHARP ELECTRONICS CORPORATION

BY _____
William M. Bloss, CT01008
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange Street
P.O. Box 606
New Haven, Connecticut 06503-0606
(203) 772-3100 (Phone)
(203) 772-1691 (Facsimile)

Attorneys for Sharp Electronics Corporation

**Of Counsel**:

Robert W. Adams
U. S. (Mickey) Gill
Nixon & Vanderhye, P.C.
1100 Glebe Road
Arlington, VA 22201
(703) 816-4000 (Phone)
(703) 816-4100 (Facsimile)