# EXHIBIT D

1

448

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF CONNECTICUT

3    *   *   *   *   *   *   *   *

4    SONY ELECTRONICS, ET AL    *

5                  Plaintiff,    *   Case No. 00CV754(JBA)

6          VS.                   *

7    SOUNDVIEW TECH, INC.        *
                  Defendant.    *   OCTOBER 16, 2002

8    *   *   *   *   *   *   *   *

9              TRANSCRIPT OF STATUS CONFERENCE

10   B E F O R E :

11         THE HON. JANET BOND ARTERTON, U.S.D.J.

12

13   APPEARANCES:

14       FOR SONY ELECTRONICS:
             KENYON & KENYON
15           One Broadway
             New York, NY 10004
16           BY:  RICHARD GRESALFI, ESQ.

17           KAYE, SCHOLER, FIERMAN, HAYS & HANDLER
             425 Park Avenue
18           New York, NY 10022
             BY: RICHARD STEUER, ESQ.

19
             JAIME SIEGEL, ESQ
20           One Sony Drive
             Park Ridge, NJ 07656

21
             TYLER, COOPER & ALCORN
22           205 Church Street
             New Haven, Ct. 06509
23           BY: JACQUELINE BUCAR, ESQ.

24                       Sharon Montini
                    Official Court Reporter

25

EXHIBIT
D

2

1
2        FOR CONSUMER ELECTRONICS
         ASSN & ELECTRONIC INDUSTRIES ALLIANCE:
3            DICKSTEIN SHAPIRO & MORIN
             2101 L Street N.W.
4            Washington DC 20037
             BY:  JORGE KOTELANSKI, ESQ.
5

6        FOR MITSUBISHI DIGITAL
         ELECTRONICS AMERICA:
7            MORRISON & FOERSTER
             555 W. Fifth Street
8            Los Angeles, CA 90013
             BY:  VINCENT J. BELUSKO, ESQ

9        FOR SHARP ELECTRONICS:
             NIXON & VANDERHYE
10           1100 N. Glebe Road
             Arlington, VA 22201
11           BY:  ROBERT ADAMS, ESQ.

12       FOR TOSHIBA AMERICA CONSUMER PRODUCTS:
             NIXON & VANDERHYE
13           1100 N. Glebe Rd
             Arlington, VA 22201
14           BY:  LARRY NIXON, ESQ.

15       FOR SOUNDVIEW:
             NIRO, SCAVONE, HALLER & NIRO
16           181 W. Madison Street
             Chicago, IL 60602
17           BY:  PATRICK SOLON, ESQ

18           HOWD & LUDORF
             65 Wethersfield Ave
19           Hartford, Ct. 06114
             BY:  DAVID MONASTERSKY, ESQ.
20

21

22

23

24

25

3

1          THE COURT: Good afternoon, ladies and

2     gentlemen, counsel.  Please be seated.  This is a

3     status conference in Sony v. Soundview, 00cv754.  I

4     might suggest in the future that for a status

5     conference we probably do not need quite so many

6     people.  However, let's have appearances for the

7     record, please.

8          MR. GRESALFI: Your Honor, Rich Gresalfi

9     for Sony.

10          THE COURT: Yes.

11          MR. NIXON: Larry Nixon for Toshiba.

12          MR. ADAMS: Robert Adams for Sharp

13     Electronics Corporation.

14          MR. BELUSKO:: Vincent Belusko for

15     Mitsubishi Digital Electronics, Inc.

16          MR. STEUER: Richard Steuer for Sony.

17          MR. SIEGEL: Jaime Siegel, Sony.

18          MR. KOTELANSKI:  Jorge Kotelanski for

19     Consumer Electronics Manufacturers Association,

20     Consumer Electronics Association, and Electronic

21     Industries Alliance.

22          THE COURT: Is that all the defendants?

23          MS. BUCAR:  Local counsel here, your

24     Honor, Jacqueline Bucar from Tyler Cooper for Sony.

25          THE COURT: All right, plaintiffs?

4

1    MR. SOLON: Your Honor, Patrick Solon and

2  David Monastersky for Soundview.

3    THE COURT: All right, our purpose today

4  is to figure out the most orderly way to proceed with

5  the case having decided the matters of infringement,

6  patent infringement on summary judgment.

7    Let me -- and I have reviewed your status

8  reports, and thank you very much, you have well

9  anticipated the purpose of the status conference.

10  The two motions that will need to be renewed are

11  Sony's and Soundview's motions for summary judgment

12  on each other's antitrust claims, and I take it that

13  Soundview will press its antitrust claims even in the

14  face of a finding of noninfringement.

15    MR. SOLON: That's right, your Honor.  I

16  think the character of it can change depending on

17  which way the infringement issue turns, but we do

18  have a claim under either scenario.

19    THE COURT: Can you give me just a

20  thumbnail of how your antitrust theory works absent

21  patent infringement?

22    MR. SOLON: Yes, your Honor.  Soundview in

23  1999, the facts in the time frame we focussed on in

24  our papers, we've shown that there was a concerted

25  action to drive down the market price for licenses on

5

1    this patent, and there were 12 or so companies that

2    benefitted from that concerted action and were able

3    to pay a submarket price, and the parties, those

4    parties have been released, so they're not here

5    anymore, but the parties who are here were

6    participants in that, and they were part of the

7    effort to drive down the price.  So, they engaged in

8    an illegal collective action, and we were injured

9    because Soundview should have received more for the

10   licenses that it had to give at fire sale prices

11   because of the collusion.

12        It's also a possibility that a jury could

13   find that in 1999 parties in this room desired a

14   license but were unwilling to pay the market price

15   and were -- you know, used that as part of their

16   motivation for entering into the conspiracy.

17        THE COURT:  So, tell me how Soundview is

18   entitled to require a license under its patent if the

19   non-Soundview parties' accused product --

20   non-Soundview parties' product doesn't infringe

21   Soundview's patent.

22        MR. SOLON:  Well, Soundview can never

23   require anyone to take a license, your Honor, not

24   even in this courtroom if you were to rule that they

25   do infringe.

THE COURT: If I'm to rule what?

MR. SOLON: Even if you were to rule that they all infringe, we can't require them to take a license. They have to desire a license and want to buy one like any other service or good. This is an intangible right, but -- and there was a market for that, and there were parties, and I believe parties in this room, who believed that they infringed, and there are parties who took licenses who still believe that they infringe, and when they took those licenses they benefitted from a below market price, and your ruling, your Honor, is as to the people in this room.

THE COURT: Now, there was some reference in the status reports that you relied on the settlements with the other parties as evidence of the forced fire sale. How can you use a settlement, given all the vagaries that enter into settlements, to be evidence of that purpose?

MR. SOLON: Well, everything has a price, and prices can be determined. There are lots of things where pricing can be determined objectively because of the factors involved. A patent license may fall into that category as opposed to a straight commodity where you can just check the trade back in Chicago and see what the price is, but what we do

1    note, facts we have of record, are the belief of

2    parties that they needed a license if they wanted to

3    continue to do what they were going to do, each have

4    televisions, and given that they need a license, that

5    they had to arrive at a price to pay for that, and as

6    just in every patent case where there is evidence of

7    patent damages related to what's an appropriate

8    market price for a -- you know, use of that patent,

9    it's something that the evidence -- commonly, we do

10   it all of the time, is laid out as to what the

11   appropriate value is, and that may include risk of

12   litigation in this antitrust context.  I mean, it

13   could.

14        THE COURT: Obviously you will be

15   expanding the briefing on it and recasting it in

16   light of the summary judgment of noninfringement, but

17   what I'm still a little bit perplexed on, if it turns

18   out that they didn't need a license in order to not

19   infringe the patent, how can their collusion produce

20   damages?

21        MR. SOLON: Well, they clearly wanted

22   licenses, your Honor.  I'm trying to get at the exact

23   cause of your concern and better respond to it.

24        THE COURT: The distinction between they

25   wanted licenses, they rolled the dice, and were

1  determined not to have infringed, is it the -- when

2  you say "risk of litigation", is that the rolling of

3  the dice that you say reflects the illegal nature of

4  the collusion?

5         MR. SOLON: Well, I don't think so, your

6  Honor.  I don't have that fully in my head right now,

7  but --

8         THE COURT: I know I sprung this on you,

9  I'm just trying to think ahead through all of the

10  issues and the sequence in which they get decided, or

11  it's sort of a decision tree, if noninfringement were

12  reversed, how does that affect us going out.

13         MR. SOLON: Well, one could go back and

14  look at the licenses that were entered into during

15  litigation and say, well, was there some aspect of

16  that that involved litigation risk.  We don't think

17  so with companies that the only record evidence

18  before you is that they believed they infringed and

19  that they needed a license.  Now --

20         THE COURT: But those are people who are

21  not parties, right?

22         MR. SOLON: They are no longer parties

23  only because they have been settled and released.

24         THE COURT: Right, but they're not parties

25  now, so there is no antitrust judgment that could

9

1    enter against them.

2            MR. SOLON: That's right.  However, they

3    were the beneficiaries of the collective action of

4    all, which was like the baseball free agents in 1984

5    in that they wouldn't deal with us.

6            THE COURT: But they aren't parties, so

7    how are you damaged in your remaining antitrust claim

8    by their discontinued participation in the suit?  At

9    trial who would a jury be looking to?

10           MR. SOLON: Right, the remaining

11   conspirators who haven't been released who are liable

12   for the entirety of the conspiracy, and what they

13   did, along with others who are no longer in this

14   case, is collectively they drove down a market price

15   and they reduced that market price, and Soundview, as

16   effectively seller, sold goods for less than -- sold

17   licenses for less than they would have sold absent

18   the conduct that we allege violates the antitrust

19   laws that the parties in this room were involved in.

20           Being involved in this room, the parties

21   in this room being involved in that, are liable for

22   the difference between what Soundview would have

23   received for licenses absent the conduct -- we have

24   to go into a hypothetical analysis, absent the

25   conduct, Philips was the first, and from Philips on

1    down, would have paid more.   That's our evidence, and

2    they would have paid more had the people in this room

3    or the parties represented by the people in this room

4    not done what we allege violates the law.

5              THE COURT: So you believe you can

6    continue to prosecute your antitrust claim no matter

7    what the outcome is on appeal of the noninfringement

8    claim -- noninfringement decision.

9              MR. SOLON: That's right, your Honor.   I

10   do believe it's impacted.   The facts come out

11   differently one way or the other.

12             THE COURT: So, you'll rebrief it on the

13   development -- based on the developments.

14             MR. SOLON: That's what we would do, your

15   Honor.

16             THE COURT: All right.

17             MR. SOLON: Your Honor, may I?   We had

18   suggested in our status report, however we have not

19   filed a motion, I think Sharp in the status report

20   said the same thing, you know, one possibility would

21   be to get an entry of judgment on the infringement

22   issue and clear that up before we figure out what

23   kind of antitrust claim --

24             THE COURT: Well, I thought about that, so

25   thank you for the segue because I thought about how

1    we would do a 54(b) partial final judgment on the

2    noninfringement, and we could do that.

3         Looking at it from the sense of judicial

4    economy, doesn't it make some sense to also get

5    antitrust issues before the Federal Circuit at the

6    same time, if there are summary judgment motions that

7    are granted, and we're going to have Sony's motion

8    for summary judgment, we're going to have your motion

9    for summary judgment -- and by the way, you have

10   tomes of exhibits and chamber's copies.  When you

11   rebrief just incorporate by reference, don't resubmit

12   that all, we've got it.

13        What I couldn't do in light of the

14   disposition of the noninfringement claim was

15   understand what your -- what the bases of either of

16   your summary judgment motions were, there was

17   sufficient uncertainty, so that's why I need that

18   rebriefed, but all of the exhibits can just get

19   reincorporated.

20        All right, so let me think about this.

21   Mr. Adams wants to suggest something.

22        MR. ADAMS: Well, first of all, I wanted

23   to clarify something that Soundview counsel said.

24   Sharp did not support a certification of just the

25   ruling on noninfringement.  To the contrary, Sharp

1    proposed exactly what your Honor is talking about

2    now, making rulings on the summary judgments relating

3    to the antitrust motions and have those two issues go

4    up to the Federal Circuit.  So, I just wanted to

5    clarify that we're supporting what you're suggesting

6    and we are not supporting Soundview's proposal.

7         THE COURT:  Well, I'm not really

8    suggesting, I'm just asking for your input on whether

9    the way I've looked at it is correct.  If I grant

10   both motions for summary judgment on each other's

11   antitrust claims, then we get a final judgment of

12   everything and the Second Circuit -- the Federal

13   Circuit gets to do the whole case.

14         If I were to deny one or the other or two

15   of the motions for summary judgment, both of which

16   are to be briefed in light of the finding of

17   noninfringement, then we have one of two things we

18   could do.  Then certify the 54(b) partial final

19   judgment and stay trial because it would not make too

20   much sense to go ahead with trial absent, if

21   possible, some finality on that.  On the other hand,

22   if in fact Sony's motion implicates patent validity

23   and PTO fraud -- oh, if it was granted you've got it

24   before the Federal Circuit, if it's not granted then

25   it gets stayed.

13

1          All right, let me hear from Sony.

2          MR. GRESALFI: Your Honor, may I make a

3   suggestion? There are two types of antitrust claims

4   in this case. There is the type that Soundview has

5   brought against the non-Soundview parties, and they

6   have -- that's a claim they're making against us, and

7   there is a motion that there is no antitrust

8   violation because of a lack of antitrust injury and

9   for other reasons. Mr. Steuer, Mr. Antitrust lawyer,

10  can talk to you about in more detail.

11          Sony antitrust claim is of a very

12  different nature. As you indicated, it involves

13  fraud in the patent office, which is very similar to

14  the inequitable conduct claims in the case that the

15  other non-Soundview parties have also asserted.

16  Those two claims all go to attorneys' fees.

17          THE COURT: May I just stop you, just

18  because I'll lose track of the line. The

19  non-Soundview, non-Sony parties do not have antitrust

20  claims?

21          MR. GRESALFI: Correct, your Honor.

22          THE COURT: And their inequitable conduct

23  claims are mooted by the finding of noninfringement.

24          MR. GRESALFI: Well, your Honor, we also

25  have -- Sony also has an inequitable conduct claim,

1  as do the other parties, and I think it is within the

2  Court's discretion to moot those, but they're not

3  necessarily moot, and the reason they're not moot is

4  because they all go to attorneys! fees, and the

5  problem that we've had in this case, your Honor, and

6  quite frankly I wouldn't normally say this, but

7  sitting here in this court listening to the factual

8  representations that have been made to the Court, for

9  example I think Mr. Solon told the Court that there

10  was evidence before the Court that everybody thought

11  they infringed this patent.  Well, I have every

12  single license agreement that was signed by the

13  parties in this case, and many of them, if not most

14  of them, say things like the following:  "Nothing

15  contained herein shall be construed as an admission

16  by JVC or its parent company that they have infringed

17  the patent."  It's directly in the settlement

18  agreements that they have just represented to the

19  Court show that they all thought they infringed.

20           These were nuisance settlements.  Our

21  clients, your Honor, have spent million and millions

22  of dollars defending what we believe are frivolous

23  claims in this case and we are prepared in 30 days,

24  your Honor, to file a motion -- to refile our motion

25  and renew it on the antitrust ground to get rid of

15

their claim, but there should be consequences because
we think that even asserting that claim at this stage
raises very serious Rule 11 violations.

We need to be compensated at some point,
and, your Honor, we're happy to cut all losses at
this point. We don't want to spend anymore money on
this case, it was frivolous from the outset, and we
told them -- Sony told them in 1998, your Honor, that
we didn't have separate rating signal lines and a lot
other elements. We didn't infringe their patent.
They continued to ignore that claim limitation. You
can see it in all of the papers, it's in the record,
and here we are again, and they're standing before
this Court and telling the Court that they have a
viable antitrust claim because we didn't take a
license for technology we didn't use. This is a
ridiculous claim, your Honor. It shouldn't be in
this court and we shouldn't have to pay to defend it.

THE COURT: Well, I'm not going to -- I've
inquired as to whether or not they are pursuing the
claim. Mr. Solon explains to me the grounds on which
they are pursuing the claim. We'll need to review
your motion and their opposition in order to make the
determinations that both you urge and Mr. Solon
urges, and we'll do that in 30 days. We'll get the

16

1    rebriefing in in 30 days, but let's figure out.

2          MR. GRESALFI: I could do that, your

3    Honor.  The suggestion I'm going to make is because

4    the infringement, the noninfringement ruling and

5    Soundview's antitrust claim are related, and if there

6    is a Rule 54(b) certification on just the

7    infringement, it will in fact lead to multiple

8    appeals, and we should avoid that at all cost

9    because, once again, it's more cost for our client.

10          So, what we would suggest, your Honor, is

11   that we brief that in 30 days, your Honor decides

12   that, hold everything else in abeyance and let's take

13   that up on appeal and resolve it once and for all,

14   and then all that's left below is whether or not the

15   non-Soundview parties after spending two or three

16   years litigating this case in Virginia and

17   Connecticut for a case that should never have been

18   brought should get some of their money back.  So,

19   let's deal with just the --

20          THE COURT: That presumes that both of you

21   have summary judgment granted against you on your

22   antitrust claims.

23          MR. GRESALFI: Your Honor, our antitrust

24   claim and the unenforceability claim, the inequitable

25   conduct claims are all vehicles -- and additionally

1    we could file a motion for the Court to declare the

2    case exceptional -- they're all vehicles for us to be

3    compensated in some sense for the millions of dollars

4    we have spent defending this case.

5           THE COURT: Shouldn't we do that at end of

6    the day?

7           MR. GRESALFI: Yes.

8           THE COURT: So, what your scenario then

9    is, both sides renew their motions for summary

10   judgment.

11          MR. GRESALFI: No, your Honor.

12          THE COURT: Why shouldn't they?

13          MR. GRESALFI: They can, your Honor, but

14   that's an additional expense and what that would --

15          THE COURT: I see what you are saying.

16          MR. GRESALFI: What that leads to is a

17   basis for attorneys' fees again, and there is a lot

18   of ways we can do that. It involves inequitable

19   conduct, it brings in the other non-Soundview

20   parties' claims. We can all handle that at the end

21   of the day if your Honor feels that this really was

22   vexatious litigation.

23          THE COURT: Are you saying that Soundview

24   should not at this time renew its motion for summary

25   judgment against Sony?

18

1          MR. GRESALFI: Yes, your Honor.

2          THE COURT: And so in order to accomplish

3    both side's objectives of allowing plaintiffs to

4    appeal the noninfringement determination, and then if

5    you're successful we're either -- we're back with a

6    trial on infringement and the antitrust claims,

7    because then your theory of antitrust would be

8    different, we don't have to get into the larger

9    panoply of inequitable conduct and patent validity

10   and so forth, it's implicated in Sony's theory of

11   antitrust.

12         MR. GRESALFI: Yes.

13         THE COURT: Which is whether or not there

14   is infringement.

15         MR. GRESALFI: Yes, they're all related.

16         THE COURT: And so we can just stay

17   everything else and then all of this -- all of this

18   equitable case stuff gets all determined after the

19   parties have certainty on the critical central issue.

20         MR. GRESALFI: Yes, your Honor, and

21   depending on what happens, we may avoid a trial at

22   the end and save the Court's resources and time

23   because, for example, if they persist in pushing this

24   antitrust case when there is no infringement, I think

25   the Court would take notice of that, and we could

1   even file some kind of motion as a possibility to

2   declare the case exceptional without going through --

3   potentially going through other avenues to get to

4   attorneys' fees, like establishing there was

5   inequitable conduct or antitrust violations, because

6   surely pushing their antitrust claim at this stage

7   when it's been determined by the Court that there has

8   been no infringement, and in fact in the Court's

9   opinion there was a reference that there was

10  absolutely no support in the patent itself for the

11  way they were reading the patent, I think clearly

12  making us defend against that would support an

13  attorneys' fee award.

14              THE COURT: That issue is for another day.

15              MR. GRESALFI: I understand, your Honor.

16              THE COURT: Mr. Solon, doesn't that make a

17  lot of sense?

18              MR. SOLON: Well, your Honor, I'm not sure

19  I'm capturing actually the idea.

20              THE COURT: Let me summarize how I'm

21  seeing this.  Sony renews its motion for summary

22  judgment on your antitrust claim on its theory that

23  you have no other recovery if noninfringement has

24  been found.  So, the noninfringement is very tied

25  into that.  If they're correct and I grant summary

1    judgment, then we could then certify a 54(b) partial

2    judgment for you to appeal and those things that are

3    interrelated on infringement get decided, everything

4    else gets stayed.

5              If you -- if they do not prevail on their

6    motion for summary judgment, we stay the case and let

7    the non -- let you appeal the noninfringement

8    determination.  Then those issues that do not hinge

9    on infringement or noninfringement, or are not

10   claimed to, theoretically, patent invalidity,

11   inequitable conduct, fraud on the patent office, all

12   of those other things we take up after we have the

13   Federal Circuit's determination of whether summary

14   judgment should or should not have been granted.  If

15   it should have been granted that casts them in one

16   light, if it shouldn't have been granted that casts

17   everything in a different light.

18             So, that's the plan that has a lot of

19   appeal to me as an efficient way of carrying out both

20   our mandates of reducing cost and delay.  I don't

21   know how much on the delay part, but --

22             MR. SOLON: On the Soundview antitrust

23   claim, your Honor, there are of course two

24   possibilities.  If the summary judgment were refiled

25   and denied and then a stay and the appeal would just

1    be infringement, so we'd be where Soundview suggests

2    is the best way to go right now.  If it were granted,

3    we would then have an appeal and the appeal would

4    require Soundview as the adverse party on the

5    judgment to argue the antitrust claim two ways

6    effectively, one based on a reversal of the

7    infringement ruling and one based on the way that you

8    have determined it in your actual opinion, and so it

9    complicates the appeal either way.

10              THE COURT: But I thought you told me that

11   there was a theory even with noninfringement, an

12   antitrust theory.  That's actually why I was asking

13   you that question at the outset.

14              MR. SOLON: Absolutely, your Honor.  I'm

15   not changing that at all.  I'm envisioning the appeal

16   brief.  Were you, I believe, to honor a judgment

17   against the antitrust claim filed by Soundview as

18   well as a judgment on the infringement issue, enter

19   final judgment on those counts, up we go.  The appeal

20   brief is there is an issue for trial as to

21   infringement, there is an antitrust claim assuming

22   that there is an issue for trial for infringement,

23   then there is an antitrust claim assuming there is no

24   infringement.  We would -- our brief would say all of

25   those things.  The first you would have ruled on, the

22

1    third you would have ruled on, the second you would

2    not have ruled on, and we have a much more

3    complicated appeal and the Federal Circuit --

4                THE COURT: I would not have ruled on the

5    second because why?

6                MR. SOLON: Well, whether there is an

7    antitrust claim in the event there is a triable case

8    on infringement.

9                THE COURT: But the issue for appeal will

10   be whether or not your theory of antitrust is viable.

11               MR. SOLON: We'll be able to argue it both

12   ways on appeal, your Honor.

13               THE COURT: As one of the two things.

14               MR. SOLON: Right.

15               THE COURT: And necessarily -- so if you

16   win on that, that part gets stayed, it isn't going to

17   be certified.

18               MR. SOLON: You think the Soundview -- our

19   view is it's better to stay the Soundview antitrust

20   claim because for you to rule on it under one set of

21   circumstances that we hope will change on appeal is

22   not going to be a good use of everybody's briefing

23   time, and they're not -- the people in this room

24   won't spend any money on the antitrust case if we're

25   on appeal on the issue of infringement, which it

23

1    seems to me satisfies what at least Sony is urging.

2               THE COURT: Let me pose that to you.

3    Rather than doing your summary judgment now, why not

4    just go on appeal and then if you're right, that

5    summary judgment should have been granted on

6    infringement, giving you a noninfringement judgment,

7    then at that time you renew your motion for summary

8    judgment on the antitrust claim that says there is no

9    infringement, there is no antitrust injury, and there

10   is no theory under antitrust law of antitrust injury

11   absent infringement.

12              MR. GRESALFI: Your Honor, the Court's

13   order I think directed us to revise and refile our

14   motion based on the one footnote where we said if the

15   Court finds noninfringement there can't possibly be

16   an antitrust violation of this case, and it's based

17   only on that holding, which is going to go up to the

18   Federal Circuit.  Presumably, our brief would focus

19   just on that.  They wouldn't be able to raise all of

20   these issues he's talking about on appeal.  The only

21   issue on appeal would be A, whether the Court's

22   ruling, claim construction ruling, was correct, and

23   then whether given that, the judgment of

24   noninfringement, whether you can ever have an

25   antitrust claim that's viable based on that, and we

1   are more than confident that that will be affirmed on

2   appeal.

3          If we don't do it that way, your Honor,

4   we're going to be going up multiple times on the

5   antitrust case.  It should be done together and in

6   one shot if they persist in pushing the antitrust

7   claim, which we don't think they should, they should

8   withdraw it.

9          MR. ADAMS: This motion, Sony motion, as

10  narrowed by the Court's suggestion in its order, is a

11  motion that's going to need to be filed no matter

12  what happens, and it's better to do it now, is why

13  Sharp recommends that approach, it's better to do it

14  now than put it off until later, and that's why we

15  believe that would be the most cost effective

16  procedure.

17         THE COURT: And that's because your theory

18  is a simple one of there is no antitrust liability

19  without infringement.

20         MR. GRESALFI: Yes, your Honor.

21         MR. NIXON: Your Honor, if I might just

22  point out, this is -- I know we're not here to argue

23  the merits of this in view of what has been asserted.

24  I might point out to the Court that those parties

25  that supposedly settled this litigation at fire sale,

1    below market rates were subject to this Court's

2    jurisdiction and the plaintiff had every right to

3    continue -- the defendant in this case, the patentee

4    had every right to continue with the litigation and

5    extract the full amount of what the Court would have

6    determined to be the, quote, reasonable royalty, end

7    of quote, and in fact if there was willfulness

8    involved the Court could have increased the damage,

9    etcetera.

10           So they had their complete right, remedy

11   for their patent in this Court in the judicial

12   setting.  It is impossible, in our view, to have an

13   antitrust damage or injury under those circumstances

14   because they always had full recourse to collect

15   every cent that was due them.  They chose in this

16   case to settle with some of these people at what

17   amounts to nuisance values these days, unfortunately,

18   and that was their decision, and they made it freely.

19   There was no conspiracy, but even more than that,

20   there can be no injury where they had the full rights

21   that they were granted under the patent, really,

22   which involved bringing this litigation and trying to

23   enforce their patent rights.

24           THE COURT: Without getting too much into

25   the arguments on the viability of antitrust theories,

1  which none of you were asked to be prepared to do

2  today, I think that the most efficacious course is to

3  follow 54(b) with respect to both infringement and

4  the related antitrust claim, leaving aside and apart

5  Sony's antitrust claim.  That seems to me to fit the

6  purpose of Rule 54(b) quite well, and will encompass

7  all of the defendants -- excuse me, the non-Soundview

8  parties.  I won't refer to them at the not-Mac

9  parties.  And I think that will achieve what

10  Soundview wants as well, which is if summary judgment

11  were granted against Soundview on the basis -- on the

12  ground you don't have an antitrust theory without

13  infringement, you need to appeal that, so that we

14  have everything ready to be tried when this comes

15  back.

16          So, I don't see that this is in anyway

17  complicating that appeal.  If the only grounds that

18  Sony has is no infringement, no antitrust, one of two

19  things happens, the Court agrees and you needn't

20  appeal, if the Court disagrees, then it's stayed.

21          So, I think this is very efficient.  I

22  think this is the way to do it.  So, I'll ask you --

23  I'll ask counsel to prepare the appropriate papers,

24  draft order, circulate that back and forth so that we

25  are looking at a partial final judgment after, and

27

1    I'll ask you to do that 14 days after I rule on

2    Sony's motion for summary judgment.

                MR. SOLON: Your Honor, if I may?

4               THE COURT: Yes.

5               MR. SOLON: It looks like you've made up

6    your mind.

7               THE COURT: Well, no, this is all a

8    continuum of thought, but I'm taken by that process.

9               MR. SOLON: I know in my client's interest

10   if we're going to have an appeal, it may at this

11   point, we don't know, it may involve antitrust, that

12   they would like it to involve all of the antitrust.

13   My client does not want to come back down from appeal

14   and then have to address what we think is -- they

15   have defenses and claims for attorneys' fees, the

16   antitrust laws are not the way to present those, and

17   that was our summary judgment. I think it's a very

18   simple summary judgment, and if we're going to go off

19   potentially on appeal on the antitrust, my client

20   would like that to be one of the issues, or not,

21   depending on your ruling, but equally with the

22   Soundview claim, we would like to present our defense

23   to the antitrust claim, which is quite simple from

24   our papers.

25               THE COURT: No, I understand that, but I

1    don't think that your summary judgment motion is a

2    simple one.   I think it's -- judging from volume

3    alone, it's huge.

4              MR. SOLON: I didn't think it was, your

5    Honor, but maybe their response is huge.

6              THE COURT: Well, that's how I look at it,

7    is the composite.   I think that there is no perfect

8    world out here, but I think that honing in on the

9    existence of infringement is the key, and so long as

10   Sony limits its motion for summary judgment to my

11   pithy characterization of no infringement, no

12   antitrust, then we get that legal theory tested.

13   Either you're wrong, he's got another theory that

14   holds and we'll just stay it, or you're right and

15   then you get to appeal whether that's right or not.

16   I think that in a less than perfect world

17   accomplishes the purpose of 54(b) in the context of

18   this case.   It in no way reflects or is any

19   determination of any of these attorneys' fees issues,

20   which just have to be left.   I mean, there is no way

21   I'm going to be able to make any kind of

22   determination absent certainty on whether there is

23   infringement or not.

24             So, I thank you for your thoughtful input

25   here.   I'm persuaded that the way to go is Sony

1    renews its motion in more than one line in a

2    footnote, does so in 30, defendant -- excuse me,

3    Soundview has the opportunity for opposition 21 days

4    thereafter, and any reply is 10 calendar days

5    following that.  And I will ask the parties to submit

6    the appropriate draft proposed orders under Rule

7    54(b) within 14 days after the Court's ruling on that

8    motion for summary judgment.

9              Does that reasonably suit everyone?

10             MR. GRESALFI: Your Honor, absolutely

11   acceptable to Sony, and just to make sure it's

12   absolutely clear, when you say Sony, that motion

13   pertaining to all of the non-Soundview parties

14   because all of them have been accused of antitrust

15   violations and they will all be participating.

16             THE COURT: But they're not -- I see what

17   you are saying.

18             MR. ADAMS: I believe we all joined in the

19   motion, even though it was referred to as the "Sony

20   motion."

21             MR. GRESALFI: Because the claim,

22   Soundview's antitrust claim is collusion among the

23   entire television manufacturing industry.

24             THE COURT: But it's only Sony who has the

25   antitrust claim against Soundview.

1          MR. GRESALFI: Exactly.

2          THE COURT: Your old exhibits will serve

3    here.  I need new briefs, your old exhibits are fine,

4    you don't need to resubmit them as long as it's clear

5    what you are referring to.

6          MR. GRESALFI: Perfectly fine.  Just at

7    the risk repeating myself, I just must make it clear

8    for the record because it's involved  -- all of these

9    attorneys are here not because people want to come to

10   watch, it's because there are so many parties

11   involved, it's going to be very expensive to go

12   forward briefing their claim here, and we really

13   believe, your Honor, and I just want to say for the

14   record, that this is a frivolous claim and we will

15   brief it and we are confident that the Court will see

16   it our way and we will be seeking some relief for

17   putting us through this.

18         THE COURT: But I'm not making any

19   determinations and I don't want any Rule 11 motion at

20   this point.

21         MR. GRESALFI: We're not at all.  I just

22   want to make it clear we feel they should withdraw.

23         THE COURT: All right, anything further?

24         MR. SOLON: Well, your Honor, I would just

25   note that I haven't asked him to brief it, they're

asking you to do that.

THE COURT: You didn't invite all of these people here today?

MR. SOLON: No, they're the plaintiff, in fact, your Honor.

THE COURT: All right, then, I appreciate this. I think this is a thoughtful resolution here; your input is the thoughtful part, and we will proceed with this schedule. Thank you very much.

I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled
matter.

12/13/02
Date

Official Reporter