UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SONY ELECTRONICS, INC. et al.          )
                                       )
              Plaintiffs,              )
                                       )
       v.                              )     LEAD DOCKET NO.
                                       )..   3:OO-CV-00754 (JBA)
                                       )     U.S.D.C./New Haven
SOUNDVIEW TECHNOLOGIES, INC., et al.   )
                                       )     ALL CASES
              Defendant.               )
                                       )

## SEC'S SUPPLEMENTAL REPLY TO SOUNDVIEW'S OPPOSITION BRIEF

Sharp Electronics Corporation (SEC) is filing this separate, supplemental brief in response to certain group conspiracy arguments directed at SEC in Soundview's brief opposing the antitrust summary judgment motion filed by the non-Soundview parties. SEC has joined in and fully adopts the arguments made in the non-Soundview parties' main reply brief that is being filed today.

SEC is filing this paper because Soundview's opposition brief asserts at page 3 (and elsewhere) that the non-Soundview parties presented no evidence to rebut the claim that the non-Soundview parties engaged in a group boycott and concerted refusal to deal to take a license or to try to lower the license payment.[1] As shown hereinafter, this statement is entirely false with respect to SEC and its parent company, Sharp Corporation (hereafter Sharp Japan).

More specifically, the unrebutted evidence in this case establishes that (1) only the

---

[1] SEC notes that Soundview's argument is not relevant to the issue that the Court instructed the parties brief – *i.e.*, whether the grant of the non-Soundview parties' non-infringement summary judgment motion also supports the grant of a motion to dismiss the Soundview antitrust and CUPTA claims. Nevertheless, SEC wants the record to be clear that it does not agree with the statements on page 3 of Soundview's opposition brief and, therefore, it wants to record to contain citations rebutting Soundview's group conspiracy contentions vis-à-vis SEC.

Intellectual Property Department (hereafter the patent department) of Sharp Japan has the right to make licensing decisions with respect to the offer of U.S. patent licenses, (2) only Sharp Japan received an offer of a license from Soundview, (3) the patent department of Sharp Japan made a unilateral decision to refuse Soundview's license offer, (4) Sharp Japan's patent department made the decision to refuse the Soundview license because it independently determined that there was no infringement and (5) the patent department of Sharp Japan was not informed of the accused activities at EIA/CEMA meetings. These five unrebutted facts mandate the grant of summary judgment in favor of SEC with respect to the Soundview antitrust and CUPTA claims against SEC.

**(1) Only the patent department of Sharp Japan has the right to make licensing decisions with respect to U.S. patent licenses**

SEC simply is not authorized to decide whether to accept a patent license from an outside company or what, if any, royalties are appropriate. (Tanner Tr. 7, 43-45, attached as Ex. 46 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts) Instead, only the patent department of Sharp Japan has the authority to make decisions with respect to whether Sharp Japan and SEC will accept a license under a U.S. patent. (Kimura Tr. 7, 9-11, 24-25, attached as Ex. 47 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts)

Thus, the evidence of record demonstrates that only the patent department of Sharp Japan has the right to make U.S. patent licensing decisions. Soundview has presented no evidence that SEC (the wholly owned subsidiary of Sharp Japan) has any authority to make or did make any licensing decisions with respect to the Elam patent.

**(2) Only Sharp Japan received an offer of a license from Soundview**

Sharp Japan was the actual recipient of Soundview's letter in April 1998 offering a license. (Kimura Tr. 7, 9-11, 24-25, attached as Ex. 47 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts) Significantly, SEC itself never received any offer of a license from

2

Soundview nor did it ever negotiate with Soundview concerning a license under the Elam patent.

(Mossman Tr. 26-27, 30, 32-33, attached as Ex. 49 to the non-Soundview parties' Local Rule

9(c)(2) Statement of Facts)

Hence, the record is clear that only Sharp Japan was offered a license by Soundview and

that no license offer was made to SEC.

### (3) The Sharp Japan patent department unilaterally refused Soundview's license offer

The decision to reject Soundview's proposal of a license was made solely by the patent

department of Sharp Japan. (Kimura Tr. 7, 9-11, 24-25, attached as Ex. 47 to the non-

Soundview parties' Local Rule 9(c)(2) Statement of Facts). In particular, Sharp Japan's

Intellectual Property Department Manager, Mr. Tetsuji Kimura testified as a 30(b)(6)

representative as follows:

Q: Who else was involved in the decision not to accept Soundview's licensing offer
besides yourself?

A: In addition toe [sic] myself, it would have been my boss, Mr. Kuratani. Then my boss
changed and became Mr. Murakami. So all told, it would have been myself, Mr. Kuratani and
Mr. Murakami.

(*Id.* at 24-25)

Significantly, Soundview has offered no evidence that any other persons were involved in

the unilateral decision by Sharp Japan to refuse a license under the Elam patent. For example,

Soundview has provided no proof that SEC or anyone else (such as anyone with Sony, Toshiba

or Mitsubishi) was involved in that decision by the patent department of Sharp Japan.

### (4) Sharp Japan's patent department refused
### a license because there is no infringement

The unilateral decision by Sharp Japan's patent department to refuse a license under the

Elam patent was based entirely upon Mr. Kimura's conclusion that no license from Soundview

was necessary because there could be no infringement. (Kimura Tr. 9-11, 15-19 and 24-25,

3

691061

attached as Ex. 48 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts)  In fact,

Mr. Kimura testified that he concluded that there was no infringement because Sharp receivers

do not contain, *inter alia*, a microprocessor having separate rating signal lines. (Kimura Tr. 25,

attached as Ex. 48 to the non-Soundview parties' Local Rule 9(c)(2) Statement of Facts)

Obviously, Mr. Kimura's opinion was correct because this Court concluded that there was no

infringement for the very same reason.  See this Court's Ruling dated September 26, 2002.

Although Soundview has complained that it took Sharp Japan about 18 months to respond

to Soundview's April 1998 offer of a license, the sale of Sharp televisions incorporating a V-chip

microprocessor did not begin until a few months before the date when Sharp Japan responded in

November 1999. Kimura Tr. 43, attached as Exhibit A hereto.  In other words, Sharp responded

shortly after the first Sharp product containing V-chip functionality appeared in the United States

in about June/July 1999.

### (5) Sharp Japan's patent department was not told of the accused activities at EIA/CEMA meetings

The record is unrebutted that Mr. Kimura and his patent department were not informed of

the activities at CEMA meetings.  (Kimura Tr. 20, 37-38, 41, attached as Ex. 50 to the non-

Soundview parties' Local Rule 9(c)(2) Statement of Facts)  Hence, nothing that was said or done

at those meetings had any impact upon the patent department's unilateral decision to refuse a

license under the Elam patent.

### (6) Soundview's bald allegations cannot create a conspiracy

As is apparent from the foregoing, Soundview's continued allegations of a cartel or a

conspiracy cannot create a cause of action with respect to SEC (or Sharp Japan) in the absence of

specific proof that SEC participated in such a cartel or conspiracy.  Although Soundview's

opposition repeatedly lumps SEC into the alleged cartel, it is noteworthy that the only citation

with respect to SEC/Sharp Japan is a reference (at page 8 of Soundview's opposition brief) to

4



Page 43

```
 1   And there's one other as well.                              17:32:39

 2                     MR. ADAMS:  Maybe it was this one.          17:32:42

 3                     MR. GREENSPOON:  For the record, I would    17:32:45

 4   like to mark a couple of documents that the witness testified 17:32:46

 5   about.  Exhibit Sharp 7 will be the e-mails SHA9049 through   17:32:50

 6   62.  And Exhibit Sharp 8 will be the e-mails at MAT-S-0211209 17:33:01

 7   through 11.                                                   17:33:19

 8                     (Whereupon, e-mails SHA9049-62 and

 9   MAT-S-0211209-11 were marked Deposition Exhibit Numbers 7 and

10   8, respectively, for identification.)

11                     MR. ADAMS:  Rob, where does the            17:33:21

12   redacting -- you've got some redacting on that document.      17:33:23

13                     MR. GREENSPOON:    Yes.                     17:33:29

14                     MR. ADAMS:   Where does that go just so I   17:33:30

15   can conform my copy?  Thank you.                              17:33:33

16                     MR. GREENSPOON:  Mr. Kimura, I thank you    17:33:39

17   for coming from so far away to be here today.                 17:33:42

18                     MR. ADAMS:  I have just a couple of         17:33:50

19   questions.                                                    17:33:52

20   EXAMINATION BY MR. ADAMS:                                     17:33:53

21            Q.    Looking at Sharp Exhibit 3, which is dated    17:33:57

22   April 30, 1998, did Sharp have a television receiver          17:34:03

23   containing V-Chip functionality at that time?                 17:34:13

24            A.    We were not making one.                       17:34:37
```


SEC Exhibit A



| | | |
|---|---|---|
| 1 | not sure that that answers it. | 12:27:24 |
| 2 | Were you aware that Tri-Vision was asked to | 12:27:29 |
| 3 | design a system that evaded the Soundview Patent? | 12:27:31 |
| 4 | A.    I don't know about that. | 12:27:56 |
| 5 | Q.    I'm going to show you a document, pages | 12:27:58 |
| 6 | E716 through 18.  I have only one copy of it. | 12:28:02 |
| 7 | MR. ADAMS:  Let me see that for a minute. | 12:28:18 |
| 8 | Thank you. | 12:28:18 |
| 9 | Q.    Would you review the three pages of the | 12:28:23 |
| 10 | document and tell me if you recognize any of it. | 12:28:27 |
| 11 | A.    I don't recognize any of it. | 12:28:38 |
| 12 | Q.    On the second page -- you can recognize | 12:28:40 |
| 13 | English names, can't you? | 12:28:44 |
| 14 | A.    What English name? | 12:28:58 |
| 15 | Q.    Do you see on the second line in English | 12:29:05 |
| 16 | words there's written "Soundview"? | 12:29:08 |
| 17 | A.    Yes. | 12:29:12 |
| 18 | Q.    Do you see there's a symbol next to the | 12:29:13 |
| 19 | Soundview name of a circle within a circle? | 12:29:17 |
| 20 | MR. ADAMS:  I'm going to object to this | 12:29:30 |
| 21 | question on the basis of foundation.  You haven't tied it to | 12:29:32 |
| 22 | either the witness or to Sharp. | 12:29:37 |
| 23 | Q.    Do you see the circle within the circle? | 12:29:47 |
| 24 | A.    I see the circle within the circle. | 12:29:50 |

**SEC Exhibit B**

```
1            Q.    On the top of the page what does the circle  12:29:54
2   within the circle indicate?                                 12:29:59
3                  MR. ADAMS:  Again, I make the same           12:30:04
4   objection.  There's a total lack of foundation.  The witness 12:30:06
5   has said he hasn't seen this document and there's no        12:30:09
6   indication that it's a Sharp document.                      12:30:13
7            A.    That's true.  Do you want to know the        12:30:27
8   meaning of this?                                            12:30:33
9            Q.    Yes.                                         12:30:35
10                 MR. ADAMS:  And, again, you're just asking   12:30:38
11  for a translation.  I don't have an objection if you're     12:30:41
12  asking him to translate what it says in Japanese.  I do have 12:30:45
13  an objection if you're making any kind of inference that this 12:30:52
14  is some kind of Sharp document.                             12:30:57
15                 THE INTERPRETER:  The answer from the        12:31:11
16  witness was "impossible to get around it."                  12:31:12
17           Q.    Was there ever any discussion at Sharp       12:31:15
18  Corporation about the impossibility to get around the       12:31:18
19  Soundview Patent?                                           12:31:21
20           A.    Not that I know of.                          12:31:33
21           Q.    I'd like to show you what appears to be      12:31:39
22  source code in various collections.                         12:31:44
23                 MR. ADAMS:  I think here we have a           12:31:48
24  confidentiality problem that I think we can work out.  But I 12:31:51
```