```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

Sony Electronics, Inc.,       :
et al.                        :
                              :      Lead Docket No.
v.                            :      3:00cv754 (JBA)
                              :
Soundview Technologies, Inc.  :
```

**Ruling Awarding Sharp Electronics Corporation Attorneys Fees**

On July 12, 2005, this Court granted in part the Non-Soundview Parties'[1] Motion for Attorneys Fees [Doc. #473], awarding attorneys fees pursuant to 28 U.S.C. § 1927. See Ruling on Motion for Attorneys Fees [Doc. # 506], at 23. The Court directed the non-Soundview parties to submit their claim for reasonable fees and costs and supporting documentation within 30 days, with Soundview's response due 21 days thereafter. See id. Subsequent to the Court's ruling, Mitsubishi Digital Electronics America ("Mitsubishi") withdrew its motion for attorneys fees and Mitsubishi and Soundview stipulated to the dismissal of all claims by and against Mitsubishi and Soundview [Doc. # 522]. Additionally, the Consumer Electronics Association ("CEA") and

---

[1] The "Non-Soundview Parties" were five television manufacturers and two industry associations. As noted in the Court's earlier ruling [Doc. # 506], Toshiba America Consumer Products ("Toshiba") and Sony Corporation of America and Sony Electronics, Inc. ("Sony") withdrew their motions subsequent to filing and stipulated to the dismissal of all claims by and against Toshiba, Sony, and Soundview. See [Docs. ## 507, 508].

the Electronic Industries Alliance ("EIA") notified the Court that they had reached an agreement with Soundview to dispose of the attorneys fees issue. This ruling will therefore determine the only remaining claim for an award of attorneys fees and costs of Sharp Electronics Corporation ("Sharp").

**I.  Discussion**

The Court's ruling on attorneys fees provided that reasonable fees and costs would be awarded for defending against Soundview's antitrust counterclaim after the ruling of non-infringement issued September 25, 2002, see Sony Elecs. Inc. v. Soundview Techs., Inc., 225 F. Supp. 2d 164 (D. Conn. 2002).[2] In the October 16, 2002 conference with the parties, the Court directed the parties to brief the Non-Soundview Parties' motion seeking summary judgment on Soundview's antitrust counterclaim on the representation that the issue was "a simple one" that "there is no antitrust liability without infringement."  See Soundview's Response to Sharp's Fee Calculation [Doc. # 523], Ex. D at 24. The Court subsequently granted the Non-Soundview Parties' motion for summary judgment on Soundview's antitrust counterclaims on August 28, 2003.  See Sony Elecs. Inc. v. Soundview Techs., Inc.,

---

[2] See Ruling on Motion for Attorneys Fees, [Doc. # 506], at 23 ("Because it should have been clear to Soundview that its antitrust claim was extinguished by the summary judgment of non-infringement, its continued pursuit of the claim can only be viewed as a vexatious effort to multiply proceedings.").

2

281 F. Supp. 2d 399 (D. Conn. 2003).

As a threshold matter, the Court notes that much of Soundview's briefing in response to Sharp's attorneys fees claim amounts to an invitation to this Court to reconsider its previous ruling awarding attorneys fees and costs pursuant to 28 U.S.C. § 1927.  Indeed, Soundview begins its response by previewing its anticipated appellate arguments.  See Soundview's Response to Sharp's Fee Calculation [Doc. #523], at 2-3.  Similarly, Soundview also asserts that Sharp has not demonstrated that the fees it claims constitute "excess fees caused by Soundview" because Soundview had urged staying briefing on the antitrust claims while the Non-Soundview parties urged proceeding before completion of the appeal of the Court's summary judgment ruling on non-infringement.  Id. at 5-6.  These arguments miss the mark because, as detailed in the Court's earlier ruling on attorneys fees, Soundview persisted in its claim of a viable antitrust theory even after the Court granted summary judgment to the non-Soundview parties on non-infringement, at which point it should have been obvious that its antitrust claim was frivolous.  Given this persistence, the fees and costs borne by Sharp in its defense against Soundview's antitrust claim subsequent to the non-infringement decision constitute "excess costs, expenses and attorneys fees" under 28 U.S.C. § 1927.  These fees would have been incurred at some point (whether pre- or post-appeal of the

3

non-infringement decision),³ absent any change in Soundview's position, therefore the timing of when Sharp's fees were incurred does not alter the Court's ruling.

Soundview's argument that the hours billed and fees claimed by Sharp's counsel are excessive for the work performed, see id. at 3-5, 7, is addressed below.

A.  Reasonable Billing Rate

The traditional lodestar method for determining reasonable attorneys fees calculates a figure "based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997)(citing Blanchard v. Bergeron, 489 U.S. 87, 94 (1989)).⁴  "The 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (citation and internal quotation marks omitted).  The "prevailing community" used to determine the lodestar figure is typically, with few exceptions, "the district

---

³ The Court's ruling on non-infringement was affirmed by the Federal Circuit on August 11, 2004.  See [Doc. # 464].

⁴ The lodestar method is applicable in assessing awards for attorneys fees under 28 U.S.C. § 1927 as it is when awarding fees under fee-shifting statutes such as 42 U.S.C. § 1988. See Vishipco Line v. Charles Schwab & Co., Nos. 02 Civ. 7823 (SHS), 02 Civ. 7846 (SHS), 02 Civ. 7877 (SHS), 02 Civ. 7915 (SHS), 02 Civ. 7928 (SHS), 02 Civ. 7929 (SHS), 2003 WL 1936142, at *1-2 (S.D.N.Y. Apr. 23, 2003) (utilizing lodestar method in calculating attorneys fees awarded under 28 U.S.C. § 1927).

in which the court sits," in this case, the District of Connecticut. See id. (citation and internal quotation marks omitted). "[T]here is ... a strong presumption that the lodestar figure represents a reasonable fee." A.R. ex rel. R.V. v. N. Y. City Dep't of Educ., 407 F.3d 65, 79 (2d Cir. 2005) (citations and internal quotation marks omitted).

Sharp submitted the declaration of Robert W. Adams, Esq. in support of its motion for reasonable attorneys fees and costs. See Sharp Electronics Corp.'s Declaration in Support of Motion for Attorneys Fees [Doc. # 515] ("Adams Decl."). The declaration seeks a total of $57,931.23 in fees and costs, see id. at ¶ 10, and provides copies of the monthly invoices for all fees and costs generated, billed, and paid in defending against the antitrust claim after the Court's summary judgment decision on non-infringement.[5] See id. at ¶ 3, Exh. A. The declaration states that Sharp's law firm – Nixon & Vanderhye, P.C. – created separate billing matters for the patent matter and the antitrust matter and that therefore the fees and costs incurred for each were easily separated. See id. at ¶ 4. The monthly invoices establish that Robert W. Adams's hourly rate charged ranged from

---

[5] Sharp does not claim the billing of Holly Reavill (referred to in the invoices as "HRR"), because Ms. Reavill has since left the firm and Mr. Adams was unable to detail her services or verify and certify that those services were "reasonable and . . . required" and therefore Sharp has deducted the amount billed by Ms. Reavill ($93.75) from the total award it seeks. See Adams Decl. ¶¶ 9-10.

$440 to $490 between 2002 and 2004 (the years in which time was billed for which attorneys fees are sought).  The hourly rates of Mr. Adams's colleagues, Mickey Gill and Sheryl L. Scharmach, were $375 and $250, respectively.  In his declaration, Mr. Adams submits no declarations from other attorneys, fee surveys, or other information to support Sharp's conclusion that these hourly rates constitute reasonable rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  See Luciano, 109 F.3d at 115.  His declaration merely catalogs his own litigation experience and that of his colleagues.  See Adams. Decl. at ¶¶ 6-8.

While Soundview does not specifically dispute the reasonableness of the hourly rates claimed, the hourly rates billed by Nixon & Vanderhye, P.C. for the work of Attorneys Adams, Gill, and Scharmach exceed the highest prevailing hourly rates awarded to date in Connecticut.

At the time the work was performed, Mr. Adams was a litigation partner with substantial experience in the litigation of patent and antitrust issues.  See Adams. Decl. ¶ 6. The hourly rate billed for the work he performed ranged from $440 to $490, whereas the relevant prevailing rate awarded to date in Connecticut is $375 per hour for counsel with Mr. Adam's experience in cases with the sophisticated subject matter in this case.  See Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp.

2d 64, 76 & n.15 (D. Conn. 2000) (finding that $375 per hour was "an appropriate rate for a trial lawyer with almost 30 years experience in complex civil litigation").[6] See also Conn. State Dep't of Social Servs. v. Thompson, 289 F. Supp. 2d 198, 203-207 (D. Conn. 2003) (determining that an hourly rate of $375 per hour for a partner in private practice, in a complex case requiring attorneys with expertise in Medicare law, was "fully consistent with hourly rates charged by comparable attorneys practicing in this District"); Stuart v. Stuart, No. X08 CV 020193031, 2005 WL 590433, at *5 (Conn. Super. Feb. 10, 2005) (determining that $350 per hour for an experienced trial lawyer was "reasonable and in line with prevailing market rates in this area").  Reflecting some passage of time since these prevailing rate rulings, but without evidence of actual rate escalation in the interim, the Court concludes on this record that the reasonable hourly rate for Attorney Adams is $400.

Similarly, the rates for Mr. Adams's colleagues Mr. Gill and Ms. Scharmach have not been shown to be the prevailing rates in Connecticut.  At the time of the litigation, Mr. Gill was a partner at Nixon & Vanderhye, P.C., had "been involved in several

---

[6] Based on a review of the Nixon & Vanderhye, P.C. website, at the time of this case Attorney Adams had been practicing law for over 30 years.  See Nixon & Vanderhye, P.C. Attorney Directory, http://www.nixon-vanderhye.com/attorneys/radams.html (last visited September 16, 2005).

cases involving patent and antitrust issues," see Adams Decl. at ¶ 7, and from a review of the firm's website was a lawyer of at least 9 years' experience.  See Nixon & Vanderhye P.C. Attorney Directory, http://www.nixon-vanderhye.com/attorneys/usgill.html (last visited September 16, 2005).  The Court finds that the reasonable hourly rate for Mr. Gill's time is $325.  See Bristol Tech., 127 F. Supp. 2d at 76 (finding that experienced trial partners may bill as high as $350-$375 per hour and a first-year partner may bill in the $200-$250 per hour range).  At the time of this case, Ms. Scharmach was an associate at Nixon & Vanderhye P.C. (she is now a partner), see Adams Decl. at ¶ 8, and appears from the firm's website to have been in practice for at least four years.  See Nixon & Vanderhye P.C. Attorney Directory, http://www.nixon-vanderhye.com/attorneys/ssharmach.html (last visited September 16, 2005).  The Court concludes that a reasonable hourly rate in Connecticut for a fourth year associate attorney such as Ms. Scharmach, taking into account the complexity of the issues in this case, is $175.  See Fabri v. United Techs. Int'l, Inc., 387 F.3d 109, 128-29 (2d Cir. 2004) (affirming reduction of hourly rate for associate attorneys to a maximum of $150 for a case litigated in Connecticut); Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 277 (D. Conn. 2002) (concluding that an hourly rate of $150 was reasonable for an attorney with five years of experience in practice).

Having determined the applicable hourly rates for Sharp's three attorneys, the Court next addresses Soundview's contention that the hours billed by Attorney Adams were "excessive" and "unreasonable." See Soundview's Response to Sharp's Fee Calculation [Doc. # 523], at 3-4. Soundview argues that there must be a reduction of Sharp's claim of "$58,000 in fees for reviewing and commenting on 30 pages of text written by others, and for writing 4 pages of its own." See id. at 3. Specifically, Soundview characterizes the hours billed by Attorney Adams as "facially unreasonable," pointing to, inter alia, billings of 51 hours "to read and comment on someone else's ten page brief" and 43.25 hours "in commenting on a reply brief and writing a 4-page supplement." See id. at 4.

It is well established that if claimed hours "appear 'excessive, redundant, or otherwise unnecessary,' the court should reduce the award accordingly." Webb v. Bd. of Educ. of Dyer County, 471 U.S. 234, 254 & n.16 (U.S. 1985) (citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)). After a review of the invoices submitted by Sharp, and in light of the representations made by counsel for the Non-Soundview Parties concerning the simplicity of the antitrust issues, the Court concludes that the hours billed by Sharp's counsel are excessive, and thus unreasonable, particularly in light of his expertise and experience, and must be reduced.

9

First, it is apparent from a review of the invoices that many of the hours billed by Attorney Adams are for reviewing briefs drafted by counsel for Sony and consulting with counsel for the other Non-Soundview parties regarding the drafts. See Adams Decl., Ex. A. While some review, comment, and teleconferencing is to be expected where several parties are involved with some "divergence in interests" (see Sharp's Reply to Soundview's Response to Sharp's Fee Calculation [Doc. #524], at 2-3), more than fifty hours to review, research, comment and conference regarding another attorney's work product is clearly excessive, particularly when assisted by Attorney Gill. See Adams Decl., Ex. A (documenting 51 hours billed for "review," "comment," "research," and "telecons" on Sony's summary judgment brief).[7] Similarly, more than forty hours spent commenting and conferencing regarding Sony's reply brief and drafting a four-page supplemental brief is also excessive. See Adams Decl., Ex. A (42 hours billed to "[c]onsideration and review," "preparation of comments," and "discussion . . . with [co-counsel]" regarding the summary judgment reply brief and "preparation of [Sharp's] supplemental brief").

Second, in addition to being excessive on their face,

---

[7] Sony – the party with primary responsibility for drafting the antitrust summary judgment briefing – withdrew its motion for attorneys' fees before the Court issued its ruling. See note 1, supra.

Attorney Adams's time entries are particularly unreasonable in light of the representations made to the Court regarding the simplicity of the antitrust issues.  At the October 16, 2002 conference, the Non-Soundview Parties – including counsel for Sharp – urged the Court to proceed with briefing on the antitrust issues, rather than stay adjudication pending appeal of the non-infringement decision.  While Sharp's counsel now contends that "the billing records of Sharp . . . indicate the complicated nature of this antitrust briefing process" (Sharp's Reply to Soundview's Response to Sharp's Fee Calculation [Doc. # 524], at 2), this was not the contention of the Non-Soundview parties at the October 2002 conference:

> MR. ADAMS [Counsel for Sharp]: This motion, Sony motion, as narrowed by the Court's suggestion in its order, is a motion that's going to need to be filed no matter what happens and it's better to do it now, is why Sharp recommends that approach, it's better to do it now than put it off until later, and that's why we believe that would be the most cost effective procedure.
>
> THE COURT: And that's because your theory **is a simple one** of there is no antitrust liability without infringement.
>
> MR. GRESALFI [Counsel for Sony]: **Yes, your Honor.**

See Soundview's Response to Sharp's Fee Calculation [Doc. # 523], Ex. D at 24 (emphasis added).

Accordingly, the Court concludes that it is appropriate to reduce the hours billed by Attorney Adams by 50%, except for the

14 hours billed exclusively for the researching and drafting of Sharp's 4-page supplemental reply brief. See Adams Decl. Ex. A (Dec. 6, 2002 and Dec. 10, 2002 time entries). This reduction will bring Sharp's total award in line with the fees incurred by one of the other Non-Soundview Parties.[8]

Thus, applying the hourly rates determined above for the hours billed for each of the three attorneys, the final lodestar figure is $32,132.50.[9]

B.   Costs

In further support of its application, Sharp has submitted invoices for costs incurred in connection with defending against Soundview's antitrust claim after the non-infringement decision. Sharp submits invoices documenting costs in the amount of $36.17 for document reproduction, research, and long distance telephone charges. Soundview does not dispute the reasonableness of these costs and they are awarded to Sharp.

**II. Conclusion**

For the foregoing reasons, Sharp is awarded $32,168.67 as

---

[8] See Soundview's Response to Sharp's Fee Calculation [Doc. # 523], Ex. E ($31,079.09 billed by counsel for CEA related to the antitrust issues).

[9] The components of this figure are: (1) 14 hours spent exclusively on Sharp's supplemental brief plus 49.5 hours (half of the remaining 99 hours) billed by Attorney Adams at an hourly rate of $400, (2) 20.5 hours billed by Attorney Gill at an hourly rate of $325, and (3) .4 hours billed by Attorney Scharmach at an hourly rate of $175.

12

reasonable attorneys fees and costs.  The Clerk is directed to close this case.

        IT IS SO ORDERED.

        _____/s/_____
        Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 28th day of September, 2005.**